## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement Agreement") is made and entered into by and between: (1) Plaintiffs in the Actions listed below ("Plaintiffs"), and (2) (i) Big Picture Loans, LLC ("Big Picture") and Ascension Technologies, LLC ("Ascension") (collectively, the "Big Picture Defendants"), wholly-owned and operated entities of the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe"), a federally-recognized Indian tribe, (ii) James Williams, Jr., Michelle Hazen, Henry Smith, Alice Brunk, Andrea Russell, Tina Caron, Mitchell McGeshick, Gertrude McGeshick, Susan McGeshick, Giiwegiizhigookway Martin, Jeffery McGeshick, Roberta Ivey, and June Saad (collectively, the "Individual Tribal Defendants"), (iii) Columbia Pipe & Supply Co., Timothy Arenberg, Terrance Arenberg, DTA Trinity Wealth Transfer Trust, and Deborah M. Arenberg Living Trust (collectively, the "Columbia Defendants"), (iv) Amlaur Resources, LLC and Brian Jedwab (collectively the "Amlaur Defendants"), (v) James Dowd ("Dowd"), (vi) Simon Liang ("Liang"), and (vii) Brian McFadden ("McFadden") (collectively, the Big Picture Defendants, the Tribe, the Individual Tribal Defendants, the Columbia Defendants, the Amlaur Defendants, Dowd, Liang and McFadden shall be referred to as the "Settling Defendants"; collectively, Plaintiffs and the Settling Defendants shall be referred to as the "Parties").

This Settlement Agreement is intended to fully, finally, and forever resolve the Released Claims (*see* Section XII) of the Settlement Class (*see* Section 2.28), some of which are set forth in certain pending and dismissed civil actions, including but not limited to: *Lula Williams, et al. v. Big Picture Loans, LLC, et al.*, No. 3:17-cv-00461 (E.D. Va.) ("*Williams*"); *Renee Galloway, et al. v. Big Picture Loans, LLC, et al.*, No. 3:18-cv-00406 (E.D. Va.) ("*Galloway I*"); *Renee Galloway, et al. v. Matt Martorello, et al.*, No. 3:19-cv-00314 (E.D. Va.) ("*Galloway II*"); *Renee*

*Galloway, et al. v. James Williams, Jr., et al.*, No. 3:19-cv-00470 (E.D. Va.) ("*Galloway III*");

*Dana Duggan v. Big Picture Loans, LLC, et al.*, No. 1:18-cv-12277 (D. Mass.) ("*Duggan*");

*Richard Lee Smith, Jr. v. Big Picture Loans, LLC, et al.*, No. 3:18-cv-01651 (D. Or.) ("*Smith*");

*Christine Cumming, et al. v. Big Picture Loans, LLC, et al.*, No. 5:18-cv-03476 (N.D. Ca.); *Chris Kobin v. Big Picture Loans, LLC, et al.*, 2:19-cv-02842 (C.D. Ca.); and *Victoria Renee McKoy, et al., v. Big Picture Loans, LLC, et al.*, 1:18-cv-03217 (N.D. Ga.) (collectively, the "Actions").

## I.    RECITALS

1.1    Beginning in June 2017, Plaintiffs filed putative class action Complaints in the United States District Courts for the Eastern District of Virginia, Central District of California, Northern District of California, Northern District of Georgia, District of Massachusetts, and District of Oregon, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the usury laws of various states, among other claims, arising from loans made to consumers by Big Picture or Red Rock Tribal Lending, LLC ("Red Rock").

1.2    The Actions collectively involved substantial discovery and motion practice, including multiple motions to dismiss; the production and review of hundreds of thousands of pages of documents; depositions and expert reports; an appeal to the Fourth Circuit Court of Appeals; and pre-trial briefing and preparation, which – following significant arms-length negotiations and multiple all-day mediations conducted by Nancy F. Lesser of PAX ADR Dispute Resolution & Mediation Services and the Honorable David J. Novak – culminated in a Settlement (*see* Section 2.24).   During those mediation sessions, the fact that Troutman Sanders, LLP represented multiple Defendants, including certain Settling Defendants and certain Non-Settling Defendants, was fully disclosed to the Parties, the mediator, and the Honorable David J. Novak. Troutman Sanders, LLP did not participate in discussions where any proposed settlement term potentially adversely impacting any of the Non-Settling Defendants was being considered.

1.3     Based on Class Counsel's investigation and the Parties' negotiations, which included Class Counsel's extensive review of voluminous documents and data obtained in discovery in related litigation and multiple depositions, and taking into account the sharply-contested issues involved, the risks, uncertainty, and cost of further prosecution of this litigation, and the substantial benefits to be received by Settlement Class Members pursuant to this Settlement Agreement, Class Counsel have concluded that a settlement with the Settling Defendants on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class Members.

1.4     The Tribe, the Big Picture Defendants, the Tribal Officials, the Individual Tribal Defendants, Dowd, McFadden, and Liang assert that they are all entitled to tribal sovereign immunity.  Further, the Tribe, the Big Picture Defendants, the Tribal Officials, the Individual Tribal Defendants, Dowd, McFadden, and Liang deny that any court in the Actions has subject matter jurisdiction or personal jurisdiction over any of them. By entering into this Settlement Agreement, Plaintiffs and Class Counsel have not conceded nor agreed to these defenses.

1.5     The Columbia Defendants and the Amlaur Defendants deny that the Court in *Galloway II* has subject matter jurisdiction or personal jurisdiction over any of them. By entering into this Settlement Agreement, Plaintiffs and Class Counsel have not conceded nor agreed to these defenses.

1.6     The Settling Defendants deny all material allegations in the Complaints, deny any jurisdiction in this Court save for purposes of enforcing this Settlement Agreement, deny any fault, wrongdoing, or liability whatsoever arising out of or related to their business practices, and affirmatively state that their practices have been lawful and proper.  The Settling Defendants deny that the resolution of the merits of the Actions is suitable for class treatment, and further deny

liability to Plaintiffs or to others similarly situated, including all members of the Settlement Class. It is specifically agreed that the execution of this Settlement Agreement is not, and shall not be construed as, an admission of wrongdoing or liability by any Defendant, an admission that any Defendant violated any provision of any federal or state law, or an admission that any Defendant concedes that class treatment of the Actions is appropriate for any purpose other than certification of a settlement class as set forth herein.  By entering into this Settlement Agreement, Plaintiffs and Class Counsel have not conceded nor agreed to the preceding assertions, disputes, and defenses.

1.7    Based on the investigation and negotiations described above, Plaintiffs and Class Counsel have concluded that it would be in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure benefits to the Settlement Class and that the settlement contemplated hereby is fair, reasonable, and adequate, and in the best interests of all members of the Settlement Class.

1.8    The Parties understand, acknowledge and agree that the execution of this Settlement Agreement constitutes the settlement and compromise of disputed claims.  This Settlement Agreement is inadmissible as evidence against any Party except to enforce the terms of the Settlement Agreement and is not an admission of fact or law, or as a concession of any wrongdoing, obligation, or liability on the part of any Party or the Tribe.  The Parties desire and intend to affect a full, complete, and final settlement and resolution of all existing disputes and claims as set forth herein.  The Parties agree that nothing in this Settlement Agreement shall constitute a waiver by the Tribe, the Big Picture Defendants, the Tribal Officials, the Individual Tribal Defendants, Dowd, McFadden, and/or Liang of sovereign immunity, except as specifically and expressly provided herein, namely and only to the extent, of enforcement of this Settlement Agreement.

1.9     The Settlement contemplated by this Settlement Agreement is subject to preliminary approval and final approval by the Court, as set forth herein.  This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, it is hereby STIPULATED AND AGREED, subject to this Court's approval, that each and every claim that has been alleged, or could have been alleged based on the facts alleged in the Actions, whether brought by or on behalf of Plaintiffs, the Settlement Class (as defined in Paragraph 2.32 below), or portions of the Settlement Class, shall be fully and finally settled and compromised and dismissed with prejudice, and shall be fully discharged and released, upon and subject to the following terms and conditions.

The recitals stated above are true and accurate and are hereby made a part of the Settlement Agreement.

## II.     DEFINITIONS

2.1     As used in this Settlement Agreement, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in this Section II.  All other terms shall have the meaning accorded to those terms in the operative complaint in the Actions.

2.2     "Attorneys' Fees" means the attorneys' fees and expenses applied for by Class Counsel relating to this Settlement Agreement and approved by the Court.

2.3     "Claim" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether in law, in admiralty or in equity, whether by affirmative claim,

counterclaim, or setoff, and whether based on any federal law, state law, foreign law or common law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or that may later exist in the future, relating to and/or arising out of loans made by and/or in the name of Big Picture, Castle Payday Loans, and/or Red Rock that are the subject of the Actions.

2.4    "Claim Amount" means a *pro rata* distribution to those members of the Settlement Class who make a claim and have paid more than 2.5 times the amount of principal on their respective loan.  This Claim Amount will be the same regardless of the number of loans.

2.5    "Claims Process" means the process by which a member of the Settlement Class must complete a Claim Form certifying his or her membership in the Settlement Class and decision electing to obtain a distribution from the Settlement Fund, as set forth in Section VIII.

2.6    "Class Counsel" means Consumer Litigation Associates, P.C.; Kelly Guzzo PLC; Terrell Marshall Law Group PLLC; Berger & Montague PC; Virginia Poverty Law Center; Gupta Wessler PLLC; Tycko & Zavareei LLP; Caddell & Chapman; and their respective attorneys, as listed on the operative complaints in the Actions.

2.7    "Class Notice" means the notice (in form substantially similar to that attached hereto as **Exhibit A** and approved by the Court) that will be emailed to Settlement Class Members pursuant to the Notice Plan approved by the Court.

2.8    "Consumer" means a natural person residing in the United States of America or its territories who is a member of the Settlement Class.

2.9    "Court" means the United States District Court for the Eastern District of Virginia.

2.10    "Settling Defendants' Counsel" means Rosette, LLP; Troutman Sanders LLP; Dorsey & Whitney LLP; Hinshaw and Culbertson LLP; Ruyak Cherian LLP; and Bellew LLC, as set forth in the respective signature blocks below.

2.11    "Effective Date" is the date on which this Court's entry of the Final Approval Order and this Court's order regarding attorneys' fees have all become final because the following has occurred: (i) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Final Approval Order has passed without any appeal having been filed (which date shall be deemed to be thirty-three (33) days following the entry of the Final Approval Order, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the thirty-third (33rd) day falls on a weekend or a Court holiday, in which case the date for purposes of this Settlement shall be deemed to be the next business day after such thirty-third (33rd) day); and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three business days after a determination of any such motion or appeal that permits the consummation of the Settlement.  For purposes of this definition, the term "appeal" includes all writ proceedings.

2.12    "Final Approval" means the approval of the Settlement Agreement by the Court at or after the Final Approval Hearing, and entry on the Court's docket of the Final Approval Order.

2.13    "Final Approval Hearing" or "Final Fairness Hearing" means the hearing at which the Court will consider and finally decide whether to approve this Settlement, enter a judgment, and make such other rulings as are contemplated by this Settlement.  The Final Approval Hearing shall be scheduled in accordance with the Notice Plan approved by the Court and following the granting of Plaintiffs' motion for Preliminary Approval of the Settlement.

2.14    "Final Approval Order" means a final order and judgment entered by the Court giving Final Approval of the Settlement Agreement, dismissing with prejudice Plaintiffs' claims (which shall not include Plaintiffs' Claims against the Non-Settling Defendants), and entering a judgment in a form agreed to by the Parties according to the terms set forth in this Settlement Agreement and as approved by the Court.

2.15    "Named Plaintiffs" means Lula Williams; Gloria Turnage; George Hengle; Dowin Coffy; Marcella Singh; Renee Galloway; Dianne Turner; Earl Browne; Rose Marie Buchert; Regina Nolte; Kevin Minor; Teresa Titus; Lisa Martinez; Anthony Green; Sonji Grandy; Anastasia Sherman; Burry Pough; Linda Madison; Dominque de la Bay; Lucinda Gray; Andrea Scarborough; Jerry Avent; Lori Fitzgerald; Derek Geter; Keisha Hamm; Faith Thomas; Sharon Paavo; Latanya Tarleton; Christina Cumming; Lamesha Kondo; Andrea Mendez; Tammy Wangeline; Freeman Revels; Kimberly Pool; Tasha Pettiford; Richard L. Smith, Jr.; Victoria R. McKoy; Desiree W. Lovins; Sandra Monsalve; Carrie S. Smith; Chris Kobin; and Dana Duggan.

2.16    "Non-Settling Defendant" means any defendant in any of the Actions that is not one of the Released Parties and/or Settling Defendants in this Settlement Agreement.  The Non-Settling Defendants include at this time, but are not limited to, Matt Martorello, Justin Martorello, Rebecca Martorello, Jeremy Davis, Eventide Credit Acquisitions, Bluetech Irrevocable Trust, Kairos Holdings, LLC, Liont, LLC, Breakwater Holdings, LLC, and Gallant Capital, LLC.

2.17    "Notice Plan" means the plan for disseminating notice to Settlement Class Members that is approved by the Court, as described in Sections 6.6 through 6.8.

2.18    "Objection Deadline" shall be the final date set by the Court for Settlement Class Members to return notice of their objection to this Settlement, which shall be thirty (30) days prior to the Final Approval Hearing.

2.19   "Payment Notices" means the notices sent at the time of payment to Settlement Class Members who submit Valid Claims pursuant to Section VIII.

2.20   "Preliminary Approval" means the preliminary approval of the Settlement Agreement by the Court, conditional certification of the Settlement Class, and approval of the Notice Plan by the Court, including the method and content of notice to the Settlement Class Members.

2.21   "Released Claims" means those Claims released as set forth in Section 12.3 below.

2.22   "Released Parties" shall include the Tribe and its current and former Tribal Officials; the Individual Tribal Defendants; Big Picture; Ascension; Red Rock; Duck Creek Tribal Financial, LLC ("Duck Creek"); Tribal Economic Development Holdings, LLC ("TED"); Columbia Pipe & Supply Co. ("Columbia Pipe"); DTA Wealth Transfer Trust ("DTA Wealth"); Deborah M. Arenberg Living Trust ("DMA Living"); Amlaur Resources, LLC ("Amlaur") and each of their current and former directors, officers, principals, trustees, shareholders, partners, contractors, agents, attorneys (including, Rosette Holdings, LLC, Rosette, LLP, Robert A. Rosette, and Karrie S. Wichtman).   The Released Parties also specifically include:  (1) Simon Liang; (2) Brian McFadden; (3) James Dowd; (4) Terrance Arenberg; (5) Timothy Arenberg; (6) Brian Jedwab; (7) Alice Brunk; (8) Tina Caron; (9) Michelle Hazen; (10) Roberta Ivey; (11) Gertrude McGeshick;  (12) Jeffery  McGeshick;  (13) Mitchell  McGeshick;  (14) Susan  McGeshick; (15) Giiwegiizhigookway Martin; (16) Andrea Russell; (17) June Saad; (18) all members (past and present) of the LVD Tribal Council, each in their individual and official capacity; (19) Henry Smith; and (20) James Williams, Jr.  The "Released Parties" shall not include Matt Martorello, Justin Martorello, Rebecca Martorello, Jeremy Davis, Eventide Credit Acquisitions, LLC,

Bluetech Irrevocable Trust, Kairos Holdings, LLC, Liont, LLC, or any other entities owned, directly or indirectly, by Matt Martorello, Justin Martorello or Rebecca Martorello.

2.23    "RICO" means the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq*., and any subsequent amendments thereto.

2.24    "Service Awards" means the payments to Named Plaintiffs for their service as class representatives of the Settlement Class as set forth in Section 10.11, subject to approval by the Court.

2.25    "Settlement" means the agreement between the Named Plaintiffs as proposed representatives of the Settlement Class, and Settling Defendants, to settle and compromise, fully, finally, and forever, the Named Plaintiffs' and the Settlement Class Members' Claims in the Actions, as memorialized in this Settlement Agreement and the accompanying documents attached hereto.

2.26    "Settlement Administrator" means the class settlement administration company mutually agreeable to all Parties and approved by the Court, which has been hired by the Parties to provide the Class Notice and to carry out the other specified, administrative tasks set forth in this Settlement Agreement.

2.27    "Settlement Agreement" means this Class Action Settlement Agreement and Release.

2.28    "Settlement Class" or "Settlement Class Member" means all consumers residing within the United States who executed loan agreements with Red Rock, Castle Payday Loans, or Big Picture (including loans assigned to Big Picture) from June 22, 2013 to the date of the Preliminary Approval Order; provided, however, that "Settlement Class" and "Settlement Class Member" shall exclude: (i) all consumers who would otherwise qualify for membership in the

"Settlement Class" for which the consumer previously has released all claims as to the Settling Defendants; (ii) Settling Defendants' officers, directors, and employees; (iii) Settling Defendants' attorneys; (iv) Plaintiffs' attorneys; and (v) any judge who has presided over either mediation or disposition of this case and the members of his or her immediate family.

2.29   "Settlement Fund" means the amount paid pursuant to Sections 10.1 and 10.2 herein.  The Settlement Fund shall be inclusive of any and all Service Awards, Attorneys' Fees, costs, expenses, notice to the Settlement Class Members, and settlement administration costs.

2.30   "Settlement Website" means the internet website established by the Settlement Administrator for purposes of facilitating notice to, and communicating with, the Settlement Class and for receipt of online claims.

2.31   "Tribal Officials" means the Individual Tribal Defendants and/or any past or present members of the Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Council and/or any employees of the Tribe or any arms of the Tribe.

2.32   "Valid Claim" means a claim filed pursuant to Section VIII by a Settlement Class Member who (1) repaid his or her loan in full, and also (2) paid more than 2.5 times the original principle amount of the loan in payments over the life of the loan.

## III.   NO ADMISSION OF LIABILITY OR TO THE ELEMENTS OF CLASS CERTIFICATION FOR PURPOSES OF MERITS RESOLUTION.

3.1   Settling Defendants' Denial of Wrongdoing or Liability.  Settling Defendants have asserted and continue to assert many defenses in these Actions and have expressly denied and continue to deny any fault, wrongdoing, or liability whatsoever arising out of the conduct alleged in the Actions.  Settling Defendants expressly deny any fault, wrongdoing, or liability whatsoever, as well as the validity of each of the claims and prayers for relief asserted in the Actions.  The Parties expressly acknowledge and agree that neither the fact of, nor any provision contained in,

11

this Settlement Agreement nor any of the implementing documents or actions taken under them, shall constitute or be construed as an admission of the validity of any claim, any status, or any fact alleged in the Actions or any fault, wrongdoing, violation of law, or liability of any kind on the part of Settling Defendants and/or the Released Parties, or any admission by Settling Defendants and/or the Released Parties of any claim or allegation made in any action or proceeding against Settling Defendants. Settling Defendants have denied and continue to deny each and all of the claims and allegations in the Actions. Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or Settling Defendants' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against any or all Settling Defendants of any fault, wrongdoing or liability whatsoever, or any infirmity of any defenses asserted by any or all Settling Defendants.

3.2    No Waiver of Tribal Sovereign Immunity. The Big Picture Defendants, the Tribe, the Individual Tribal Defendants, the Tribal Officials, Dowd, McFadden, and Liang expressly assert that they are all entitled to tribal sovereign immunity. Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or Defendants' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against the Big Picture Defendants, the Tribe, the Individual Tribal Defendants, the Tribal Officials, Dowd, McFadden, and/or Liang of any waiver of sovereign immunity.

3.3     No Admission of Applicability or Inapplicability of State Law or State Regulation. The Big Picture Defendants, the Tribe, the Individual Tribal Defendants, and the Tribal Officials expressly deny that they – or any of their loans or lending activity – are subject to the laws and/or regulations of any state.   Plaintiffs expressly assert that they – and any of their loans or lending activity – are subject to the laws and/or regulations of their respective states.   Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or the Parties' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against any Party as to the application of state law and/or state regulation to the Settling Defendants, their loans, or their activities.

3.4     No Admission by Settling Defendants of Elements of Class Certification for Merits Resolution.  Settling Defendants deny that a class should be certified other than for purposes of this Settlement and reserve their rights to contest any class certification motion should this Settlement Agreement not be approved by the Court.  Settling Defendants contend for settlement purposes only that the Actions could be certified as a class action under Federal Rule of Civil Procedure 23, including Rule 23(b)(2) and/or 23(b)(3).   Nothing in this Settlement Agreement shall be construed as an admission by any Defendant that the Actions or any similar case is amenable to class certification for trial purposes.   Furthermore, nothing in this Settlement Agreement shall prevent Settling Defendants from opposing class certification or seeking de-certification of the conditionally certified Settlement Class if Final Approval of this Settlement is not obtained, or not upheld on appeal, including, without limitation, any review by the United States Supreme Court.

3.5     None of the foregoing disclaimers in this Section should be construed as an admission or stipulation by Plaintiffs and Class Counsel regarding the Released Parties' defenses, including the disputed issues of sovereign immunity, the application of state law, and/or the legality of the subject lending practices.

3.6     Admissibility of this Settlement Agreement and Release.  The Parties agree that this Settlement Agreement, its terms and provisions, and any facts surrounding its entry by the Parties shall not be used in any court of law, including the Actions, for any purpose other than those permitted under Section 14.1 below.

## IV.     CERTIFICATION OF THE SETTLEMENT CLASS

4.1     Certification of Settlement Class.  Plaintiffs shall seek, and Settling Defendants shall not oppose, the certification for settlement purposes only of the Settlement Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  If the Settlement Agreement is not finally approved by the Court for any reason whatsoever, the certification of the Settlement Class will be void, and no doctrine of waiver, estoppel, or preclusion will be asserted in any litigated certification proceedings in this Action.  No agreements made by or entered in connection with the Settlement Agreement may be admitted as evidence or used in any way by Plaintiffs, Settling Defendants, any person in the Settlement Class, or any other person to establish any of the elements of liability or class certification other than as expressly provided herein in any litigated certification proceedings, whether in the Actions or any other judicial proceeding.

4.2     Appointment of Class Counsel and Class Representatives. For Settlement purposes only, Plaintiffs shall also seek, and Settling Defendants shall not oppose, appointment of Class Counsel, and appointment of the Named Plaintiffs as class representatives, to represent the Settlement Class.

## V.     PRELIMINARY APPROVAL

5.1     Amended Complaint and Single Case for Settlement.  Upon execution of this Settlement Agreement and prior to the filing of the Motion for Preliminary Approval of this Settlement Agreement, Plaintiffs in *Galloway III* shall seek leave to amend their complaint to add the Plaintiffs and the Settling Defendants from the other Actions, after which *Williams*, *Galloway I*, *Galloway II*, *Duggan*, and *Smith* shall be voluntarily dismissed as to the Settling Defendants only.  The amended complaint in *Galloway III* shall represent a consolidation of the allegations against the Settling Defendants and will name all of the Settling Defendants.  The Parties agree to consent to Plaintiffs' request to amend their complaint in *Galloway III* solely for the purposes of effectuating this Settlement.  The Settling Defendants do not by such consent agree that the allegations that may be contained in such amended complaint are true, correct, or accurate.  In the event this Settlement is not finally approved, Plaintiffs shall file whatever motions and pleadings are necessary to ensure that the Parties are postured in the respective Actions as they were prior to the aforementioned amendment as if such amendment intended for settlement purposes had never occurred.

5.2     Order of Preliminary Approval.  Plaintiffs shall move the Court for entry of the Preliminary Approval Order subsequent to the amendment described in Section 5.1. Pursuant to the motion for preliminary approval, Plaintiffs will request that:

5.2.1    the Court certify the Settlement Class for settlement purposes only, appoint the Named Plaintiffs as the class representatives of the Settlement Class for settlement purposes only, and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only;

5.2.2    the Court preliminarily approve the Settlement Agreement as fair, adequate, and reasonable, and within the reasonable range of possible Final Approval;

5.2.3   the Court approve the form(s) of Class Notice and find that the Notice Plan satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;

5.2.4   the Court set the date and time for the Final Fairness Hearing, which may be continued by the Court from time to time without the necessity of further notice; and,

5.2.5   the Court set the Objection Deadline.

5.3   Stay.  Other than actions taken for purposes of effectuating the Settlement and those items covered in Sections 6.2 of this Settlement Agreement and subject to Court approval, the Parties agree to jointly move the respective Courts for stays of the Actions – including all pending motions and discovery directed to the Parties – and any related appeals after preliminary approval and pending Final Approval of this Settlement Agreement with respect to Settling Defendants only.  The stay will not apply to the prosecution of claims against the Non-Settling Defendants.

## VI.   ADMINISTRATION AND NOTIFICATION PROCESS

6.1   Appointment of Settlement Administrator.  Class Counsel will cause to be hired the Settlement Administrator, subject to reasonable objection by the Settling Defendants and approval by the Court.  The Settlement Administrator shall be responsible for carrying out the specified tasks set forth in this Settlement Agreement, including, but not limited to, creating a post office box for receipt of objections and maintaining records of all its activities, including the dates of Class Notices, mailed checks, returned mail, and any other communications and attempted communications with the Settlement Class Members.

6.2   Provision of Data and Information for Settlement Purposes as to Settling Defendants.  Within thirty (30) days after entry of the Preliminary Approval Order and only as part of this Settlement, the Big Picture Defendants agree to provide a list of names, postal addresses, and email addresses, all if known, for Settlement Class Members to the Settlement Administrator approved by the Court for the purposes of effectuating this Settlement.  The Big Picture Defendants

Case 3:19-cv-00470-REP   Document 18-1   Filed 11/26/19   Page 17 of 57 PageID# 1178

will cooperate with the Settlement Administrator to the extent that additional personally-identifiable information is necessary to locate a Settlement Class Member. The Big Picture Defendants shall also provide Loan-Level information regarding each Settlement Class Member's loan sufficient to demonstrate the original principal balance of the loan, the interest rate, and the amount and timing of any payments the Settlement Class Member made on the Loan, as well as any other loan-level information reasonably requested by Class Counsel for purposes of effectuating the Settlement and for no other purpose. Class Counsel shall have five (5) business days to review and approve the class data and/or class list, or to notify the Big Picture Defendants of any objections to its completeness. In the event this Settlement is not finally approved, within five (5) business days of such an occurrence, Class Counsel shall destroy all copies of such data that remain in their possession, custody, or control, and shall certify to each Settling Defendant that they have done so.

6.3     **Class Certification as to a Non-Settling Defendant.** If a class action is certified against a non-Settling Defendant in one or more of the Actions, the Big Picture Defendants will provide (or provide authorization for third parties to provide) data sufficient to identify class members, to determine the terms of class members' loans, to determine payments made by class members on their loans, to determine which loans have been charged off, to determine all outstanding amounts owed under the terms of class members' loan agreements, and any other data or information about class members and their loans which is reasonably requested by Class Counsel and under this provision, such data may only be used for the purpose of creation of a class list or distribution of funds to class members, or to effectuate a subsequent settlement with such Non-Settling Defendant. Subject to the provisions in Section 6.4 below, upon Twenty-One (21) calendar days' notice, in response to a reasonable request from Plaintiffs, the Big Picture

Defendants shall also provide evidence necessary to establish the availability of this data to identify class membership in a contested class certification motion.

6.4     Other Uses   Plaintiffs have represented that they may need additional data, documents, and information to establish liability or for other important purposes in the Actions other than class certification, including by example only and without limitation,  information from: TransDotCom, LLC, Data X, LLC, and Microbilt (as it relates to the Actions); emails and communications by Non-Settling Defendants to which the Tribe or Tribal Officials  were not a party; and loan-level information regarding each Settlement Class Member's loan sufficient to demonstrate the original principal balance of the loan, the interest rate, and the amount and timing of any payments the Settlement Class Member made on the loan.  The Settling Defendants have neither agreed nor refused to provide this information and documents to the Plaintiffs as a term of the Settlement.  If such request is made to the Big Picture Defendants by the Plaintiffs, Plaintiffs will discuss their request(s) with Robert Rosette and both sides agree to negotiate and attempt to resolve any disagreement in good faith.  Any remaining disputes will be resolved in accordance with Section 6.5.

6.5     If the Parties are not able to reach an agreement on Plaintiffs' request(s), the Honorable. David J. Novak will conduct binding mediation of the disputed issues.

6.6     Notice Process Generally.  Subject to approval by the Court, Class Notice shall be provided to all persons in the Settlement Class in accordance with the Notice Plan approved by the Court.  The form of the Class Notice is attached hereto as **Exhibit A** for all Settlement Class Members.  Class Notice will be sent in accordance with Fed. R. Civ. P. 23(c) in the manner approved by the Court through email notice to verified email addresses to each Settlement Class

Member identified on the Class List.  Class Notice shall be emailed no later than thirty (30) days after the class list is reviewed by Class Counsel.

6.7     Settlement Website.  The Settlement Administrator shall establish an Internet domain and website containing information about the Settlement.  The Settlement Website will be accessible by no later than the date of the electronic mailing of the Class Notices.  The Settlement Website will post the Settlement Agreement, the Class Notice, Claim Form, the Preliminary Approval Order, the proposed Final Judgment, and, if not included in the Preliminary Approval Order, any court order setting a date and time for the Final Fairness Hearing, and all other documents and information requested by Plaintiffs, subject to reasonable objection by another Party, and any other information required by the Court.  Any information appearing on the Settlement Website in addition to the above-listed documents shall be subject to joint approval of the Parties.  The Settlement Website also will offer a Spanish-language translation option.  The Settlement Website also will detail a process through the website and direct e-mail notice by which a Settlement Class Member can review an estimated claim amount before submitting either a mailed or electronic claim as well as a process to determine, after the claim deadline has passed, an approximate amount of recovery and may elect to withdraw his or her claim.  A Settlement Class Member may elect to withdraw his or her claim only by U.S. Mail.  The Settlement Website shall be disestablished by the Settlement Administrator within ninety (90) days following the mailing of the last payment to a Settlement Class Member.

6.8     Telephone Assistance Program.  The Settlement Administrator will establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to answer questions from Settlement Class Members.  The toll-free number will provide access to live support, a voice

response unit ("VRU") or a combination of live support and VRU.  It shall also offer a Spanish-language alternative number and VRU.

6.9     Expenses of Notice and Administration.  All Class Notice, Payment Notices, and other class administration costs shall be invoiced by the Settlement Administrator and paid promptly from the Settlement Fund, as set forth in Sections 6.10 and 6.11 below.  Any disputes relating to this Subsection shall be brought to the Honorable David J. Novak for binding resolution.

6.10    Expenses Paid Through the Settlement Fund.  The total expenses associated with Class Notice, Payment Notices, and any other class administration costs (including any consulting costs), shall not increase the amount paid by any of the Settling Defendants as part of the Settlement under any circumstance.  Any and all payments shall come from the Settlement Fund before the calculation of net settlement payments to Settlement Class Members.  The Settlement Administrator shall invoice and charge as to each subsequent distribution against the payments to be made in that distribution.

6.11    In the event that the Big Picture Defendants advance payments for purposes of effectuating the Notice Plan and administration of the Settlement as provided in Sections 6.6 through 6.8 (as provided in Section 10.1), the Big Picture Defendants will provide an accounting of the payments to Class Counsel.  Any disagreement or objection as to the advance payments will be raised with Honorable David J. Novak for binding resolution.

6.12    Notice under Class Action Fairness Act of 2005 ("CAFA Notice").  Settling Defendants will send the CAFA Notice in accordance with 28 U.S.C. § 1715(a)-(b), not later than ten (10) days after this Settlement Agreement is filed with the Court.

6.13    Notice to Court. No later than fourteen (14) days prior to the Final Fairness Hearing, the Settlement Administrator shall file with the Court and serve on counsel for all Parties a

declaration stating that the Class Notice required by the Settlement Agreement has been completed, as well as implementation of the Settlement Website, toll-free telephone support, and copies of all objections received.

6.14   Confidentiality.  The Settlement Administrator (and any person retained by the Settlement Administrator) shall sign a confidentiality agreement in a form agreed to by all counsel for the Parties.  The confidentiality agreement will provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall treat as confidential the names, addresses, and all other information concerning Settlement Class Members.  The confidentiality agreement will further provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall use such information only for the purposes of fulfilling the Settlement Administrator's duties and responsibilities as provided for under this Settlement Agreement.

## VII.   PROCEDURES FOR OBJECTIONS

7.1   Objections from Settlement Class Members.  Any Settlement Class Member may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of Attorneys' Fees and costs and the Service Awards to the Named Plaintiffs.  However, no individual within the Settlement Class shall be heard, and no objection may be considered, unless the individual files the objection with the Court no later than thirty (30) days before the Final Fairness Hearing and serves the objection so that it is received by representative Class Counsel, representative Settling Defendants' Counsel (who shall forward a copy of each objection received to the other Settling Defendants' Counsel), and the Settlement Administrator no later than thirty (30) days before the Final Fairness Hearing; provided, however, objections to the Class Counsel's Attorneys' Fees or the requested Service Awards may be supplemented up to seven (7) days after the filing of a motion for such fees or

awards to address additional information or materials in the motion.  Copies of all objection papers must be sent to the following addresses:

| **Class Counsel Representative** | **Big Picture Defendants' Counsel Representative** |
|---|---|
| Leonard A. Bennett<br>Consumer Litigation Associates, PC<br>763 J Clyde Morris Blvd., Suite 1A<br>Newport News, VA  23601<br>Telephone: (757) 930-6330<br>Facsimile: (757) 960-3662<br>Email: lenbennett@clalegal.com | Karrie S. Wichtman<br>Lac Vieux Desert Band of Lake Superior<br>Chippewa Indians<br>N4698 US 45, P.O. Box 249<br>Watersmeet, Michigan 49969<br>Telephone: (906) 358-4577, extension 4127<br>Email: karrie.wichtman@lvdtribal.com |
| **Big Picture Defendants' Counsel Representative** | **Settlement Administrator** |
| Robert A. Rosette<br>Rosette, LLP<br>565 W. Chandler Boulevard<br>Suite 212<br>Chandler, Arizona 85225<br>Telephone: (480) 889-8990<br>Facsimile: (480) 899-8997<br>Email: rosette@rosettelaw.com | Settlement Administrator to be approved by the Court. |

7.2     All objections must include: (1) the objector's name, address, telephone number, and the last four digits of the Settlement Class Member's Social Security number; (2) a sentence stating that to the best of his or her knowledge he or she is a member of the Settlement Class; and (3) the factual basis and legal grounds for the objection to the Settlement; and (4) the name, firm name, phone number, email address, and mailing address of counsel representing the objector, if any.  The written objection must state whether the Settlement Class Member and/or his or her lawyer(s) intend to appear at the Final Fairness Hearing.  Any lawyer who intends to appear at the Final Fairness Hearing must also enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than thirty (30) days before the Final Fairness Hearing and shall include the

full style and case number of each previous class action case in which that counsel has represented an objector.  To the extent necessary or desired, the Parties may respond to any properly-filed objections no later than fourteen (14) days before the Final Fairness Hearing.

7.3     A Settlement Class Member who objects to the Settlement may withdraw that objection.  Any Settlement Class Member that does not make an objection in the time and manner set forth herein shall be deemed to have waived any objection and be forever foreclosed from making any objection to the fairness or adequacy of any aspect of the Settlement.

## VIII.   SETTLEMENT CLAIMS PROCESS

8.1     In order to receive a payment from the Settlement Fund, a Settlement Class Member must submit a Claim Form, no later than sixty (60) days from the date of mailing the Class Notices, by either: (1) submitting a Claim Form on the Settlement Website; or (2) returning to the Settlement Administrator, via U.S. mail, the completed Claim Form attached to the Class Notice.

8.2     Submission of claims pursuant to this Section shall be permitted commencing on the first day on which Class Notice is disseminated.

8.3     To be eligible for any payment from the Settlement Fund, a Settlement Class Member must submit a Valid Claim by completing a Claim Form, which shall be provided within the Class Notice to all Settlement Class Members and also made available for download or submission on the Settlement Website or by request from the Settlement Administrator.  The Claim Form shall be streamlined, requiring only the Settlement Class Member's name, current postal address, date of birth, and the last four digits of the Settlement Class Member's Social Security number.  The Claim Form shall also solicit and recommend Settlement Class Members submit an updated email address and current telephone number of the Class Member.  However, an email address and phone number shall not be required.  The Claim Form and the Settlement Website shall provide complete instructions for completion of this claims process.  Each Class Member

may submit only one Claim Form regardless of the number of loans the Class Member had with the Big Picture Defendants and that Claim Form will apply to all loans the Class Member had with the Big Picture Defendants.

8.4    Claim Forms submitted by U.S. mail shall contain the same information as contained in the electronic form (plus the individual's signature) and shall be mailed to a separate, dedicated post office box established by the Settlement Administrator, as provided herein.

8.5    Deceased Claimants.  Claims may be filed by deceased Settlement Class Members through authorized representatives of their estates if appropriate documentation is provided.  Any claim paid to a deceased consumer shall be made payable to the estate of the deceased.

8.6    Determining the Validity of Claims.   Claim Forms, whether submitted electronically via the Settlement Website or by U.S. mail, that do not meet the requirements as set forth in this Settlement Agreement shall be rejected.  The Settlement Administrator shall have the authority to determine whether a claim is a Valid Claim.   The Settlement Administrator's determination in this regard shall be final and non-appealable unless Settling Defendants' Counsel or Class Counsel disagree, in which case the determination shall be made by the Honorable David J. Novak.  The Settlement Administrator shall promptly notify such individual that his or her claim has been denied and why it has been denied.  Settlement Class Members shall have an opportunity to cure deficient claims.

8.7    The Settlement Administrator shall notify, in a prompt fashion, any Settlement Class Member whose Claim Form has been rejected, setting forth the reasons therefore.  The Settlement Administrator shall timely provide copies of all rejection notices to Class Counsel and to Settling Defendants' Counsel.  Such claimant shall have an additional twenty-one (21) days

24

after the date this notice is mailed to correct and resubmit the defective claim, but any subsequent determination by the Class Administrator on any resubmitted notice shall be final.

8.8     No Liability for Determinations Relating to Validity of Claims.  No person shall have any claim against Settling Defendants, Plaintiffs, the Settlement Class, Class Counsel, Settling Defendants' Counsel, or the Settlement Administrator based on any claim determinations made in accordance with this Settlement Agreement.

## IX.     FINAL FAIRNESS HEARING AND FINAL APPROVAL

9.1     Final Fairness Hearing.  The Parties will jointly request that the Court hold the Final Fairness Hearing to consider approval of the Settlement of the Actions in accordance with the time period specified in the Notice Plan approved by the Court.  On or before a date at least fourteen (14) days prior to the Final Fairness Hearing, Class Counsel shall file a motion for entry of the Final Approval Order.  The Parties agree that, upon entry, the Final Approval Order constitutes a final judgment dismissing the Actions with prejudice as to Settling Defendants and all of the Released Parties.

9.2     Final Approval.  Unless stated otherwise herein, all relief contemplated by this Settlement Agreement is expressly contingent upon the Settlement Agreement receiving the Court's Final Approval.

## X.     SETTLEMENT FUND

10.1     Creation of and Deposit into Settlement Fund.  Class Counsel, in conjunction with the Settlement Administrator, shall establish an escrow account or equivalent account at Towne Bank (the "Financial Institution"), which shall be considered a common fund created as a result of the settlement of the Actions.  The Settlement Administrator shall direct the Financial Institution to make distributions from the Settlement Fund only in accordance with this Settlement Agreement.  No funds shall be distributed or paid by the Financial Institution without written

confirmation from both Class Counsel and Settling Defendants' Counsel.  Class Counsel shall promptly notify the other Parties of the date of the establishment of the account.  Subject to credits for amounts that were previously paid by the Big Picture Defendants for purposes of effectuating the Notice Plan and administration of the Settlement as provided in Sections 6.6 through 6.8, the Big Picture Defendants shall make deposits totaling $8,700,000.00 to the Settlement Fund on the following schedule:   (1) $2,900,000 within Ninety (90) days after the Effective Date; (2) an additional $2,900,000.00 within One (1) years after the Effective Date; and (3) an additional $2,900,000.00 within Two (2) years after the Effective Date.  The failure of the Big Picture Defendants to perform as to this term will constitute a material breach.  The Settlement Fund may not be commingled with any other funds and may be held in cash, cash equivalents, certificates of deposit, or instruments insured by an arm of or backed by the full faith and credit of the United States Government.  Interest earned, if any, on the Settlement Fund shall be for the benefit of the Settlement Class Members who submit Valid Claims in the event this Settlement Agreement is not terminated by the Settling Defendants and the Effective Date otherwise occurs.

10.2     Dowd, Liang, and McFadden each presently own discrete membership interests in Eventide Credit Acquisitions, LLC ("Eventide"), which is entitled to receive payments from the Loan Agreement and Promissory Note dated September 14, 2015 between Eventide and TED (the "Eventide Note").  As separate and distinct consideration for the respective releases granted to each of them under this Settlement, each of Dowd, Liang, and McFadden shall transfer to the Settlement Fund their respective Eventide membership interests, including their respective interests in future Eventide distributions, if any, received under the Eventide Note (separately and collectively, Dowd's, Liang's, and McFadden's "Eventide Interests") subject to the Parties' understanding that such transfer must be structured in such a way as to: (a) avoid any tax liability

to Dowd, Liang, and McFadden; (b) comply with the terms of the Eventide Note; (c) comply with the terms of the Eventide Operating Agreement; and (d) if necessary because it is not possible to satisfy requirements (a), (b) and (c), through the direct transfer of their Eventide Interests, effectuate the transfer or assignment to the Settlement Fund of their respective future Eventide distributions, if any.  The transfer of the Eventide Interests shall be made in a manner to avoid Dowd, Liang, or McFadden incurring any tax liabilities; however, in the event that is not possible, such transfer shall be made, less whatever amounts are necessary to satisfy any tax liabilities incurred by Dowd, Liang, or McFadden as the result of receiving such distributions before payment to the Settlement Fund.  The Parties and Settlement Administrator shall provide their reasonable cooperation to accomplish the transfer of the Eventide Interests contemplated under this Section 10.2.  Any disputes relating to this Section 10.2 shall be brought to the Honorable David J. Novak for resolution.

10.3    Settlement Fund Distributions.   The Settlement Fund will be used to make distributions to the Settlement Class Members who submit a Valid Claim from the Settlement Fund under the process set forth below.  Class Counsel will: (1) request an award of Attorneys' Fees in an amount not to exceed Thirty-three percent (33%) of the Settlement Fund; and (2) seek the disbursement of the remaining balance of the costs of the Notice Plan and administration out of the Settlement Fund.  The remainder of the Settlement Fund shall be used to pay Settlement Class Members who submit a Valid Claim on a *pro rata* basis, as set forth below.  Distribution checks will be void after ninety (90) days.  To the extent that Attorney's Fees are awarded by the Court in an amount that is less than what is sought by Class Counsel at the time of Final Approval, the difference shall be credited to the Settlement Fund.

10.4    Costs of Notice and Administration Expenses Deduction.  Prior to Final Approval, costs of notice and any other expenses incurred in the administration of the Settlement shall be paid by the Big Picture Defendants within ten (10) business days of receiving advance, written notice from the Settlement Administrator for amounts to be invoiced by the Settlement Administrator to the Big Picture Defendants for costs and any other expenses incurred in the administration of the Settlement.  This amount shall be credited against the initial payment of $2,900,000.00 scheduled to be paid within Ninety (90) days of the Effective Date.  The Big Picture Defendants, therefore, will fund the Settlement Fund in two stages: first to pay the costs of notice and any other expenses incurred in the administration of the Settlement in accordance with Section 6.6-6.10; and second to pay the remainder of the Settlement Fund in accordance with Section 10.1. Under no circumstance shall the total amount paid by the Big Picture Defendants into the Settlement Fund exceed $8,700,000.00.  Under no circumstances shall the total amount paid by Dowd, Liang, and McFadden into the Settlement Fund exceed the Eventide Interests (addressed in Section 10.2).

10.5    Settlement Fund Tax Status.  The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Subsection, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended,

and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator.  The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns shall be consistent with this Subsection and in all events shall reflect that all federal or state income taxes ("Taxes") (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

10.6    Tax Liabilities.  All (a) taxes (including any estimated Taxes, interest or penalties) arising with respect to any income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this Subsection (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns herein ("Tax Expenses"), shall be paid out of the Settlement Fund.  In no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses.  The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as

well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefore nor shall they have any liability with respect thereto. The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.   The Settlement Administrator has discretion to submit whatever tax form(s) it deems appropriate to any Settlement Class Member.   The Settling Defendants do not make any representation or warranty as to the appropriate tax treatment of any provision of this Settlement Agreement.

10.7    Attorneys' Fees.   No later than fourteen (14) days before the Final Approval Hearing, Class Counsel shall file an application or applications to the Court for reimbursement of Attorneys' Fees and costs from the overall Settlement Fund, not to exceed Thirty-three percent (33%) of the Settlement Fund.  The application or applications shall be noticed to be heard at the Final Fairness Hearing.  Settling Defendants will not oppose such a request so long as it does not exceed that amount.

10.8    Settlement Not Conditioned on Attorneys' Fees Approval.   The application or applications for Attorneys' Fees, and any and all matters related thereto, shall not be considered part of the Settlement Agreement, and shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.  Plaintiffs and Class Counsel agree that this Settlement Agreement is not conditional on the Court's approval of Attorneys' Fees in the requested amount or in any amount whatsoever.  The Court's ruling on the application or applications for such fees shall not operate to terminate or cancel the Settlement.

10.9    All Attorneys' Fees Come Out of Settlement Fund.  Settling Defendants shall have no responsibility for, nor any liability with respect to, the payment of Attorneys' Fees to Class Counsel.  The sole source of any payment of Attorneys' Fees shall be the Settlement Fund.

10.10   Payment of Attorneys' Fees.  Attorneys' Fees in the amount approved by the Court will be paid through distribution from the Settlement Fund by the Settlement Administrator from the third and final $2,900,000 payment made by the Settling Defendants and may be paid ten (10) days after receipt of the final payment in the Settlement Fund under Section 10.1.

10.11   Service Awards to the Named Plaintiff.  On or before fourteen (14) days before the Final Fairness Hearing, Class Counsel shall file an application to the Court for a Service Award, not to exceed five-thousand dollars ($5,000.00), depending upon each Plaintiff's degree of contribution and service, to be paid to each of the Named Plaintiffs serving as class representatives in support of the Settlement out of the Settlement Fund.  Settling Defendants will not oppose such a request.  To the extent the Court approves a Service Award in an amount less than $5,000.00 to a Named Plaintiff, the difference will remain in the Settlement Fund.  Any Service Award payment shall be funded through the Settlement Fund.

10.12   Settlement Class Member Payments.  All Settlement Class Members who submit Valid Claims are entitled to payment pursuant to the processes for submitting Claim Forms and determining Valid Claims as set forth in Section VIII.  The amount of each check to be issued is subject to deduction for Attorneys' Fees and costs approved by the Court and costs of administration by the Settlement Administrator.  To calculate the amount of each payment, the Settlement Administrator shall divide the amount left in the Settlement Fund after all other payments and costs required by this Settlement Agreement have been deducted.

10.13    Settlement Checks.    All settlement checks shall be issued thirty (30) days after receipt of the second deposit into the Settlement Fund under Section 10.1.    All settlement checks shall state: "This payment is tendered to you as a class member in *Renee Galloway, et al. v. James Williams, Jr., et al.,* Case No. 3:19-cv-00470-REP (E.D. Va.) in consideration for your release of the Released Parties as set forth in the Class Action Settlement Agreement and Release."

10.14    Use and Disbursement of Settlement Fund.    The Settlement Fund shall be used only in the manner and for the purposes provided for in this Settlement Agreement.    No portion of the Settlement Fund shall be disbursed except as expressly provided for herein.

10.15    Disbursement of Funds for Notice and Administrative Expenses. Upon Preliminary Approval, the Settlement Administrator shall disburse funds for the costs of notice and related administrative expenses incurred with respect to effectuating the Notice Plan approved by the Court.

10.16    Deduction of Reasonable and Necessary Expenses. The Settlement Administrator shall distribute payments from the Settlement Fund pursuant to the processes set forth in this Section X.    The Settlement Administrator may deduct from the Settlement Fund any and all reasonable and necessary expenses for the administration of such payments (*e.g.*, costs associated with generating and mailing checks), as well as all reasonable expenses for the determinations as to Valid Claims.

10.17    General Distribution Plan.    The Settlement Administrator shall send payments via U.S. mail or by commercially reasonable electronic means out of the Settlement Fund to the Settlement Class Members who submit Valid Claims.    Each such Settlement Class Member will receive only one payment, regardless of the number of counts in any of the operative complaints in the Actions that may have applied to that Settlement Class Member.    The Payment Notices

accompanying the payment check shall notify the recipients that the checks must be cashed within sixty (60) days from the date on the Payment Notice and that the enclosed check shall not be valid after that date.

10.18   Distribution after Sixty (60) Days.  Sixty (60) days after the date on the Payment Notice, if the check has not been deposited or cashed, the amount of the check shall remain in the Settlement Fund.

10.19   Residual Amounts in Settlement Fund.  Any residual amounts in the Settlement Fund (including after payments to Settlement Class Members, Attorneys' Fees, Service Awards, and amounts necessary to effectuate the Notice Plan and for administration of the Settlement) shall be paid to The PEW Charitable Trusts.

10.20   Capped Fund.  All of the following must be paid from the $8,700,000 and Eventide Interests, if any, paid into the Settlement Fund by Settling Defendants: (i) notice and administration/consulting costs; (ii) payments to the Settlement Class Members who submit Valid Claims; (iii) payments of Service Awards to the Named Plaintiffs; (iv) and payments to Class Counsel for Attorneys' Fees.  The Parties and their respective counsel agree that under no circumstances will Settling Defendants and/or Released Parties pay or cause to be paid more than their respective contributions aggregating to the sum of $8,700,000, plus the assigned Eventide Interests, if any, pursuant to this Settlement.

10.21   No Vested Interest.  The Parties Agree, and the Court shall order, that no Settlement Class Member has a vested interest in any amount to be paid to him or her under the Settlement Agreement unless and until he or she has cashed a settlement check under the parameters and timeframe set forth herein.

## XI.    SETTLEMENT CLASS INJUNCTIVE RELIEF

11.1    Subject to the terms and conditions of this Settlement Agreement, the Parties have agreed that Plaintiffs will move for an uncontested motion for the Court to enter an injunction attached as **Exhibit B** to this Settlement Agreement that will consist of the following issues only.

11.2    Cap on Collections.  With respect to Settlement Class Members residing within the United States or its territories who executed loan agreements with Big Picture and/or Red Rock (including loans assigned to Big Picture or Red Rock) from June 22, 2013, to the date of the Preliminary Approval Order and have not fully paid off his or her loan under the agreed terms, but not including Charged-Off Loans (defined below), the Big Picture Defendants agree to collect no more than 2.5 times the original principal amount of the loan in payments over the life of the loan (*e.g.*, if the original principal amount of the loan was $500.00 then the Big Picture Defendants agree to cap collection at $1,250.00, including payments credited to either interest or principal reduction).

11.3    Cease Collection and Cancellation of Charged-Off Loans.  With respect to loan agreements executed (i) by Settlement Class Members residing within the United States or its territories, (ii) with Big Picture and/or Red Rock (including loans assigned to Big Picture) and (iii) from June 22, 2013 to the date of the Preliminary Approval Order, Big Picture will charge off such loans after being at least 210 days in default ("Charged-Off Loans").  The Big Picture Defendants agree to cease any collection activities and cancel all such loans as a contested liability to the extent not already done for Charged-Off Loans.  The Big Picture Defendants will not assign, sell, or transfer any interest in Charged-Off Loans and/or future loan proceeds from Charged-Off Loans. Any consumers with Charged-Off Loans on the Effective Date will be notified of the elimination of their defaulted loan balances through a letter, approved by all Parties and sent by the Settlement Administrator.  Such letter will be sent by email if such address is reasonably verifiable and shall

not imply or express any admission of wrongdoing by any of the Released Parties.  Any payments made on Charged-Off Loans to the Big Picture Defendants after the date of the Preliminary Approval Order will either be (i) rejected by Big Picture Defendants or (ii) held in escrow by the Big Picture Defendants and within thirty (30) days of the Effective Date shall be returned to the respective consumer or paid to the Settlement Administrator to be returned to the respective Settlement Class Member.

## XII.    RELEASE OF CLAIMS

12.1    Release for Valid Claims.  Upon the Effective Date, the Named Plaintiffs, for themselves and as representatives of the Settlement Class, each Settlement Class Member who submits a Valid Claim, and/or their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties of and from the Released Claims.  Nothing in this Settlement Agreement, however, shall be deemed a release of the Parties' respective rights and obligations under this Settlement Agreement.  Also, nothing in this Settlement Agreement shall be deemed a release of Plaintiffs' and Settlement Class Members' respective Claims against the Non-Settling Defendants.

12.2    Scope of Release for Settlement Class Members Who Submit Valid Claims.  In exchange for the relief described in this Settlement Agreement and the injunctive relief set forth in Section XI, the Settlement Class Members who submit Valid Claims and/or anyone acting or purporting to act on their behalf agree to release the Released Parties from any and all Released Claims.  It is the intent of the Parties that this release covers every possible Claim that could have been brought in the Actions against the Released Parties, regardless of any other requirement

imposed by federal or state law, including all damages claims and claims for any and other remedies.

12.3    Released Claims.  "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, tribal law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Fairness Approval Order and Judgment, that relate to and/or arise out of loans made by and/or in the name of Big Picture, Castle Payday Loans, and/or Red Rock. Notwithstanding the Release defined and stated herein, this Settlement Agreement shall not release any claim alleged against any party in *Williams, et al, v. Microbilt Corporation, et al*, Civ. No. 3:19cv85 (E.D. Va.).

12.4    Scope of Release for Settlement Class Members Who Do Not Receive a Payment ("Non-Payment Released Claims").  All Settlement Class Members who do not receive a payment from the Settlement Fund will waive their rights to bring a class action, collective action, and/or mass action (but not an individual action) against any and all of the Released Parties related to not only claims asserted in the Actions, but also claims that could have been asserted in the Actions.

12.5    General Release to Fullest Extent Possible. The Parties agree that the release is limited to those Released Claims encompassed by the provisions of Section 12.3.  Notwithstanding that understanding, Plaintiffs, for themselves and for each Settlement Class Member, acknowledge that they are aware that they may hereafter discover facts in addition to or different from those that

they or Class Counsel now knows or believes to be true with respect to the subject matter of these releases, but it is their intention to, and they do hereby, upon the Effective Date of this Settlement Agreement, fully, finally and forever settle and release any and all Released Claims and Non-Payment Released Claims, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs, for themselves and for each Settlement Class Member, further waives any and all rights and benefits afforded by California Civil Code Section 1542, which provides as follows:  "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."  Plaintiffs and Class Counsel understand and acknowledge the significance of this waiver and/or of any other applicable federal or state law relating to limitations on releases.

12.6    Binding Nature of Settlement.  Subject to the requirements of due process, this Settlement Agreement shall bind all Settlement Class Members and all of the Released Claims shall be dismissed with prejudice and released as against the Released Parties, even if the Settlement Class Member claims or can later show that he or she did not receive actual notice of the Settlement prior to the hearing on final approval of the Settlement.

12.7    This Release as set forth in this Section may be raised as a complete defense and bar to any action or demand brought in contravention of this Settlement Agreement.

12.8    Upon entry of the Final Fairness Approval Order and Judgment, the Parties shall take all actions necessary to cause entry of Final Judgment, including the severance of Claims

against the Non-Settling Defendants, and the Parties agree to dismiss the Actions and any related appeals with prejudice as to Settling Defendants.

12.9    It is expressly understood and acknowledged by the Parties that the provisions of this release and covenant not to sue as set forth in this Section together constitute essential and material terms of the Settlement Agreement to be included in the Final Approval Order.

## XIII.   TERMINATION AND SUSPENSION

13.1    Settling Defendants' Rights to Terminate Agreement.    Settling Defendants' willingness to settle the Actions on a class-action basis and to agree to the certification of conditional Settlement Class is dependent upon achieving finality in the Actions, and the desire to avoid the expense of these and other Actions.   Consequently, Settling Defendants shall have the unilateral right in their sole discretion to individually terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Plaintiffs, Settlement Class Members, or Class Counsel if any of the following conditions subsequently occurs: (1) the Court fails or declines to grant Preliminary Approval pursuant to the terms of the Preliminary Approval Order; (2) the Court modifies the terms of the Settlement Agreement; or (3) the Effective Date does not occur for any reason, including the entry of an order by any court that would require either material modification or termination of the Settlement Agreement or the Final Approval Order.

13.2    Plaintiffs' Rights to Terminate Agreement.  Plaintiffs shall have the unilateral right in their sole discretion to individually terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Settling Defendants if any of the following conditions subsequently occurs: (1) the Court fails or declines to grant Preliminary Approval pursuant to the terms of the Preliminary Approval Order; (2) the Court modifies the terms of the Settlement Agreement; or (3) the Effective Date does not occur for any

38

reason, including the entry of an order by any court that would require either material modification or termination of the Settlement Agreement or the Final Approval Order.

13.3    Disapproval of Fee Request.  Notwithstanding anything else contained herein, the failure of any Court to approve the Attorneys' Fees or Service Awards in the requested amounts, or any amounts whatsoever, shall not be grounds for the Named Plaintiffs or Class Counsel to terminate this Settlement Agreement.

13.4    Effect of Termination on This or Future Actions.  If this Settlement Agreement is rejected by the Court or terminated for any reason: (1) the class-certification portions of the Settlement Agreement shall have no further force and effect and shall not be offered in evidence or used in the Actions or in any other proceeding; (2) counsel for the Parties shall seek to have any Court orders, filings, or other entries in the Court's file that result from this Settlement Agreement set aside, withdrawn, and stricken from the record; (3) the Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection with either of them, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, liability, or proposition of law; and (4) the Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court, and no doctrine of waiver, estoppel, or preclusion will be asserted in any litigated certification proceedings in the Actions against any Party, including without limitation, the amended complaint filed in *Galloway III* and any consolidation of the Actions pursuant to Section 5.1 shall be null and void as it was filed only to effectuate this Settlement.

## XIV.  PUBLIC STATEMENTS

14.1    Public Statements.  Settling Defendants and Plaintiffs shall not issue any press releases or make any affirmative statements to any media regarding this Settlement.  Class Counsel

shall not use the name of or identity of any Settling Defendant, other than the Big Picture Defendants, on any of Class Counsel's websites or promotional materials.

## XV.   MISCELLANEOUS PROVISIONS

15.1    No Invocation of Sovereign Immunity as a Defense to the Final Settlement Agreement:  The Tribe, the Individual Tribal Defendants, the Big Picture Defendants, Dowd, Liang, and McFadden will not invoke sovereign immunity as a defense to the enforcement of the Settlement Agreement.  None of the Individual Tribal Defendants, the Big Picture Defendants, Dowd, Liang, or McFadden consent to a waiver of their sovereign immunity from suit except for the limited purposes of the enforcement of this Settlement Agreement and as follows: (a) any dispute shall be brought by and limited to Plaintiffs, Settlement Class Members and no other party or entity; (b) the dispute shall be limited to those arising under this Settlement Agreement and the enforcement of any agreement, order, judgment or ruling resulting therefrom; and (c) the dispute shall be brought in the United States District Court for the Eastern District of Virginia.  Nothing contained herein shall be construed as a waiver of the sovereign immunity of the Tribe, the Individual Tribal Defendants, the Big Picture Defendants, Dowd, Liang, and/or McFadden in any other context, proceeding or litigation.  Except as expressly set forth herein, nothing contained in this Settlement Agreement shall be construed as a waiver of any rights or privileges belonging to the Tribe, the Individual Tribal Defendants, the Tribal Officials, the Big Picture Defendants, Dowd, Liang, and McFadden, and each of their current, past and future affiliates, subsidiaries, parents, insurers, and all of the respective directors, officers, Tribal Council members, general and limited partners, shareholders, managers, representatives, employees, members, agents, attorneys, accountants successors, assigns, and representatives, including sovereign immunity from judicial process, all of which are otherwise reserved.

15.2    Choice of Law.  This Agreement and the rights of the parties under this Settlement Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia including all matters of construction, validity, performance, and enforcement and without giving effect to the principles of conflict of laws.  By agreeing to this, none of the Defendants is agreeing to the application of Virginia law in any other context.  Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or Defendants' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against the Big Picture Defendants, the Tribe, the Individual Tribal Defendants, the Tribal Officials, Dowd, McFadden, and/or  Liang of any waiver of sovereign immunity.

15.3    Discovery to Settling Defendants.  In addition to the stay sought in Section 5.3 and the dismissals pursuant to Section 5.1, as to Settling Defendants named in the Actions, all discovery as to the Settling Defendants is stayed while the Settlement Agreement goes through the approval process.  If the Settlement is not finally approved by the Court for any reason, the stay shall be terminated, and any discovery implicated by this Section 15.3 shall not be deemed due for response until at least forty-five (45) days from such termination.

15.4    Use of Discovery Materials in Related Actions.  Settling Defendants agree that documents produced, and depositions provided in *Williams* or *Galloway I* shall be produced in *Galloway II* or any other related case subject to the protective order entered or to be entered in *Galloway II.*

15.5    Destruction and Non-Use of Discovery Materials.  Class Counsel agrees to destroy all materials produced by the Settling Defendants, Released Parties, and all third parties upon entry

41

of the Final Approval Order or upon resolution of the Actions, or any related actions brought against a party that is not a Released Party, whichever is later; subject to good faith discussion between counsel of the Parties as necessary.  Class Counsel agree to be bound by the requirements of the protective orders entered in the Actions, even following their disposal of the materials.  Any disputes will be arbitrated by the Honorable David J. Novak.

15.6    Bellicose Capital, LLC ("Bellicose") Privilege.  The Big Picture Defendants agree to withdraw their assertion of attorney-client privilege for communications that occurred at Bellicose or Sourcepoint VI, LLC prior to the acquisition on January 26, 2016.  The Big Picture Defendants will produce such communications if they are within the Big Picture Defendants' possession unless another Party or entity, other than a Released Party, has timely served a separate privilege objection that has not been overruled by the respective court.  The Big Picture Defendants agree to withdraw their objections to discovery for such communications, including but not limited to third-party subpoenas to Jennifer Galloway and Conner & Winters, LLP.

15.7    Admissibility of Settlement Agreement.  This Settlement Agreement shall not be offered or be admissible in evidence in any action or proceeding except: (1) the hearings necessary to obtain and implement Court approval of this Settlement; or (2) any hearing to enforce the terms of this Settlement Agreement or any related order by the Court.

15.8    Successors and Assigns.  The terms of this Settlement Agreement shall apply to and bind the Parties as well as their heirs, successors, and assigns.

15.9    Communications Relating to Settlement Agreement.  Unless specified otherwise herein, all notices or other formal communications under this Settlement Agreement and/or the Settlement shall be in writing and sent by electronic mail, fax or hand delivery, or overnight mail postage prepaid to:

If to Class Counsel:

>Leonard A. Bennett
>CONSUMER LITIGATION ASSOCIATES, P.C.
>763 J. Clyde Morris Blvd., Ste. 1-A
>Newport News, VA 23601
>Telephone: (757) 930-3660
>Facsimile: (757) 930-3662
>Email: lenbennett@clalegal.com

If to counsel for the Big Picture Defendants, the Tribe, the Individual Tribal Defendants, Liang and McFadden:

>Robert A. Rosette
>Justin A. Gray
>Rosette, LLP
>44 Grandville Avenue SW
>Suite 300
>Grand Rapids, Michigan 49503
>Telephone: (616) 655-1601
>Facsimile: (517) 916-6443
>Email: rosette@rosettelaw.com
>Email: jgray@rosettelaw.com

If to counsel for the Columbia Defendants:

>Thomas Lester
>Devin Noble
>HINSHAW & CULBERTSON LLP
>100 Park Avenue
>PO Box 1389
>Rockford, IL 61105
>Telephone: 815-490-4946
>Facsimile: 815-490-4901
>Email: tlester@hinshawlaw.com
>Email: dnoble@hinshawlaw.com

If to counsel for Defendant James Dowd:

>Michael Stinson
>Vernle C. Durocher, Jr.
>DORSEY & WHITNEY LLP
>50 S Sixth St., Suite 1500
>Minneapolis, MN 55402
>Telephone: 612-492-6624
>Facsimile: 612-340-2868
>Email: stinson.mike@dorsey.com

Email: Durocher.skip@dorsey.com

If to counsel for Defendants Amlaur Resources and Brian Jebwab:

Rebecca Ruby Anzidei
Amadou Kilkenny Diaw
Martin Cunniff
RUYAK CHERIAN LLP
1700 K Street NW
Suite 810
Washington, DC 20006
Telephone: (202) 897-1914
Facsimile: (202) 478-1715
Email: rebeccaa@ruyakcherian.com
Email: amadoukd@ruyakcherian.com
Email: martinc@ruyakcherian.com

Sean J. Bellew
Bellew LLC
2961 Centerville Road
Suite 302
Wilmington, DE 19808
Telephone: (302) 353-4951
Email: sjbellew@bellewllc.com

The notice recipients and addresses designated above may be changed by written notice.  Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections received in relation to this Settlement Agreement.

Any Party may, by written notice to all the other Parties, change its designated recipient(s) or notice address provided above.

15.10  If any Party to this Agreement believes that another Party is in default of its obligations under this Agreement, the Party believe there is a default must advise all Parties in writing ("Notice of Default"), as listed in Section 15.9, prior to filing suit or seeking other relief to enforce the terms of this Agreement.  Upon receipt of the Notice of Default, the defaulting Party shall have thirty (30) days to cure the default.  If the default is not cured at the end of the 30-day

period, the non-defaulting Party may file suit or seek other relief to enforce the terms of this Agreement.

15.11   Non-Solicitation/Representation.  Class Counsel represents and warrants that they will not solicit or suggest, directly or indirectly, personally or through other actions, other lawyers, law firms, nonprofit entities, or governmental or regulatory authorities the filing of new actions against Settling Defendants or any of the Released Parties relating to the offering, transacting, servicing, selling, or collection of the Big Picture Defendants' or Red Rock's loans consummated prior to the date of Preliminary Approval to any consumer located in the United States.

15.12   Destruction and Non-Use of Discovery Materials:  Class Counsel agree to destroy all materials produced by Settling Defendants, any Released Party, and/or any third parties and designated upon that production as confidential upon entry of the Final Order or upon final resolution of the Actions, or any related actions brought against a party that is not a Released Party, whichever is later; subject to good faith discussion between counsel for the Parties as necessary. Class Counsel agree to be bound by the requirements of the protective orders entered in the Actions, even following their disposal of the materials.  Any disputes will be arbitrated by the Honorable David J. Novak.

15.13   Big Picture Defendants' Communications with Consumers in the Ordinary Course of Business.  Big Picture Defendants reserve the right to continue communicating with its customers and Consumers, including Settlement Class Members, in the ordinary course of business.  Big Picture Defendants shall not advise consumers of anything contrary to the terms of this Settlement.

15.14   Efforts to Support Settlement.  The Parties and their counsel agree to cooperate fully in seeking Court approval for this Settlement Agreement and to use their best efforts to effect

the consummation of the Settlement and to protect the Settlement Agreement by applying for appropriate orders enjoining others from initiating or prosecuting any action arising out of or related to facts or claims alleged in the Actions, if so required.

15.15   Competency of the Parties.  The Parties, and each of them, acknowledge, warrant, represent, and agree that in executing and delivering this Settlement Agreement, they do so freely, knowingly, and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel of their choice, that they are fully aware of the contents and effect of this Settlement, and that such execution and delivery is not the result of any fraud, duress, mistake, or undue influence whatsoever.

15.16   Procedures for Disputes Between Parties Relating to the Settlement Agreement. Unless specifically indicated as a dispute to be brought to the Honorable David J. Novak in the first instance, the Parties agree to submit any dispute arising under this Settlement Agreement first to mediation with Nancy F. Lesser of PAX ADR Dispute Resolution & Mediation Services, a private mediator previously used by the Parties on three occasions for the Actions, and, if deemed necessary and agreed by the Parties, the Honorable David J. Novak, before filing any motion or action with the Court, allowing a reasonable time for the mediation of the dispute.

15.17   Entire and Voluntary Agreement.  The Parties intend the Settlement Agreement to be a final and complete resolution of the Actions.  The Parties agree that the terms of the Settlement Agreement were negotiated at arm's length and in good faith and were reached voluntarily after consultation with competent legal counsel.  There shall there be no presumption for or against any Party that drafted all or any portion of this Settlement Agreement.  This Settlement Agreement contains the entire agreement and understanding concerning the subject matter between the Parties and supersedes all prior negotiations and proposals, whether written or oral.  No other party or any

agent or attorney of any other party has made any promise, representation or warranty whatsoever not contained in this Settlement Agreement and the other documents referred to in this Settlement Agreement to induce them to execute the same.  The Parties represent that they have not executed this instrument or the other documents in reliance on any promise, representation, or warranty not contained in this Settlement Agreement and the other documents referred to in this Settlement Agreement.  Any modification must be in writing signed by the Parties and their respective counsel and, to the extent necessary, approved by the Court.

15.18   Headings for Convenience Only.  The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

15.19   Settlement Agreement Controls.  All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  To the extent that there is any conflict between the terms of this Settlement Agreement and the Exhibits attached hereto, this Settlement Agreement shall control.

15.20   Time Periods. The time periods and dates described herein are subject to Court approval and may be modified upon order of the Court or written stipulation of the Parties.

15.21   Amendments.  The Settlement Agreement may be amended or modified only by a written instrument signed by Class Counsel and Settling Defendants' Counsel, or their respective successors-in-interest.

15.22   Receipt of Advice of Counsel. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Settlement Agreement, received independent legal advice with respect to the advisability of entering into this Settlement Agreement and fully

understands the effect of this Settlement Agreement, the Released Parties, and the Released Claims.

15.23   Authorization of Counsel.  Class Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class that they deem necessary or appropriate.  Each attorney executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such attorney has the full authority to do so.

15.24   Confidentiality.  All agreements made and Orders entered during the course of the Actions relating to the confidentiality of information shall survive this Settlement Agreement.

15.25   Court's Jurisdiction.   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement and all orders entered in connection therewith.  The Parties and their attorneys submit to the jurisdiction of the Court regarding these matters.

15.26   Construction.  Each of the Parties has cooperated in the mutual drafting and preparation of this Settlement Agreement.  Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any of the Parties.  Before declaring any provision of this Settlement Agreement invalid, a court should first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Settlement Agreement valid and enforceable.

15.27   No Claims Arising from this Settlement Agreement.  No person shall have any claim against any Settling Defendants, Released Party, Settling Defendants' Counsel, Named

Plaintiff or Class Counsel based on distribution of benefits made substantially in accordance with this Settlement Agreement or any Settlement Agreement-related order(s) of the Court.

15.28   Waiver.  The waiver by one party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

15.29   Counterparts and Date of Agreement.  This Settlement Agreement may be executed in one or more counterparts and by facsimile.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Parties shall exchange among themselves signed counterparts, and a complete set of executed counterparts shall be filed with the Court.  The Settlement Agreement shall become effective upon its execution by all of the undersigned.

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

**LULA WILLIAMS; GLORIA TURNAGE; GEORGE HENGLE; DOWIN COFFY; MARCELLA SINGH; RENEE GALLOWAY; DIANNE TURNER; EARL BROWNE; ROSE MARIE BUCHERT; REGINA NOLTE; KEVIN MINOR; TERESA TITUS; LISA MARTINEZ; ANTHONY GREEN; SONJI GRANDY; ANASTASIA SHERMAN; BURRY POUGH; LINDA MADISON; DOMINQUE DE LA BAY; LUCINDA GRAY; ANDREA SCARBOROUGH; JERRY AVENT; LORI FITZGERALD; DEREK GETER; KEISHA HAMM; FAITH THOMAS; SHARON PAAVO; LATANYA TARLETON**

Date:_____

_____
Consumer Litigation Associates, P.C.
Kelly Guzzo PLC
Terrell Marshall Law Group PLLC
Berger & Montague PC
Virginia Poverty Law Center
Gupta Wessler PLLC

**CHRISTINA CUMMING; LAMESHA
KONDO; ANDREA MENDEZ; TAMMY
WANGELINE; FREEMAN REVELS;
KIMBERLY POOL; TASHA PETTIFORD**

Date:_____     _____

                           Tycko & Zavareei LLP

**RICHARD L. SMITH, JR.; VICTORIA R. MCKOY; DESIREE W. LOVINS; SANDRA MONSALVE; CARRIE S. SMITH; CHRIS KOBIN; DANA DUGGAN**

Date:_____

_____

Caddell & Chapman

**BIG PICTURE LOANS, LLC; ASCENSION TECHNOLOGIES, LLC; JAMES WILLIAMS, JR.; MICHELLE HAZEN; GERTRUDE MCGESHICK; SUSAN MCGESHICK; GIIWEGIIZHIGOOKWAY MARTIN; JAMES DOWD; SIMON LIANG; BRIAN MCFADDEN; KARRIE WICHTMAN; HENRY SMITH; ALICE BRUNK; ANDREA RUSSELL; TINA CARON; MITCHELL MCGESHICK; JEFFERY MCGESHICK; ROBERTA IVEY; JUNE SAAD**

Date:_____          _____

Rosette, LLP

**COLUMBIA PIPE & SUPPLY CO.; TIMOTHY ARENBERG; TERRANCE ARENBERG; DTA TRINITY WEALTH TRANSFER TRUST; DEBORAH M. ARENBERG LIVING TRUST**

Date:_____                    _____

                                         Hinshaw and Culbertson LLP

**JAMES DOWD**


Date:_____          _____
                                         Dorsey & Whitney LLP

**AMLAUR RESOURCES, LLC; BRIAN JEBWAB**

Date:_____                    _____

                                        Ruyak Cherian LLP

Date:_____                    _____

                                        Bellew LLC

Return Address Box 123
Return City, ST 12345-6789

E1234 0000001 P01 T00001 ************5-DIGIT 12345

 John Q. Sample
123 Any Street
Any Town, ST 12345-6789