IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RENEE GALLOWAY, *et al.*,

    Plaintiffs,

v.                        Civil Action No. 3:19-cv-470

JAMES WILLIAMS, JR., *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on EVENTIDE CREDIT ACQUISITIONS, LLC'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(a) (ECF No. 42) (the "MOTION"). Eventide Credit Acquisitions, LLC ("Eventide") moves to intervene in this case to challenge the CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE (ECF No. 18-1) (the "Settlement Agreement") between the Plaintiffs[1] and

---

[1]    The named Plaintiffs in this class action are Lula Williams, Gloria Turnage, George Hengle, Dowin Coffy, Marcella Singh as administrator of the estate of Felix Gillison, Jr., Renee Galloway, Dianne Turner, Earl Browne, Rose Marie Buchert, Regina Nolte, Kevin Minor, Teresa Titus, Lisa Martinez, Anthony Green, Sonji Grandy, Anastasia Sherman, Burry Pough, Linda Madison, Dominque de la Bay, Lucinda Gray, Andrea Scarborough, Jerry Avent, Lori Fitzgerald, Derek Geter, Keisha Hamm, Faith Thomas, Sharon Paavo, Latanya Tarleton, Christina Cumming, Lamesha Kondo, Andrea Mendez, Tammy Wangeline, Freeman Revels, Kimberly Pool, Tasha Pettiford, Richard L. Smith, Jr., Victoria Renee McKoy, Desiree Wright Lovins, Sandra Monsalve, Carrie Samantha Smith, Chris Kobin, Dana Duggan, and John Actis. (ECF No. 18 at 1.)

the Settling Defendants.[2]   (ECF No. 42 at 1.)   The Court has considered the MOTION, the supporting, opposing, and reply memoranda, and the arguments of counsel at the July 17, 2020 hearing.   For the reasons set forth below, EVENTIDE CREDIT ACQUISITIONS, LLC'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(a) (ECF No. 42) will be denied.

## BACKGROUND

The Plaintiffs filed—in Williams v. Big Picture Loans, LLC, 3:17-cv-461 (E.D. Va.) ("Williams"), Galloway v. Big Picture Loans, LLC, 3:18-cv-406 (E.D. Va.) ("Galloway I"), Galloway v. Martorello, 3:19-cv-314 (E.D. Va.) ("Galloway II"), and Galloway v. Williams, 3:19-cv-470 (E.D. Va.) ("Galloway III")—four similar, but in many respects substantively quite different, actions arising out of a so-called "Rent A Tribe" scheme allegedly orchestrated by Matt Martorello ("Martorello"), members of his family, companies that he controls, and investors who allegedly funded the scheme (the "Martorello Defendants").   The Settling Defendants have reached a settlement as to all claims asserted

---

2   The Settling Defendants are Big Picture Loans, LLC ("Big Picture"), Ascension Technologies, LLC ("Ascension"), James Williams, Jr., Michelle Hazen, Henry Smith, Andrea Russell, Alice Brunk, Tina Caron, Mitchell McGeshick, Gertrude McGeshick, Susan McGeshick, Giiwegiizhigookway Martin, Jeffery McGeshick, Roberta Ivey, June Saad, Columbia Pipe & Supply Co., Timothy Arenberg, Terrance Arenberg, DTA Trinity Wealth Transfer Trust, DMA Trinity Wealth Transfer Trust, Amlaur Resources, LLC, Brian Jedwab, James Dowd, Simon Liang, and Brian McFadden.   (ECF No. 18 at 1-2.)

2

against them in <u>Williams</u>, <u>Galloway I</u>, <u>Galloway II</u>, and <u>Galloway III</u>. Eventide is a named defendant in <u>Galloway II</u>, but not in the other actions.

## A.   The Settlement Agreement in <u>Galloway III</u>

The proposed class in <u>Williams</u> includes only Virginia consumers. (<u>Williams</u>, ECF No. 190 at 11–12 (memorandum in support of motion "seek[ing] certification of the following classes of Virginia consumers" and enumerating proposed classes as "Virginia RICO Class," "Virginia RICO Injunctive Relief Class," "Virginia Usury Class," and "Virginia Unjust Enrichment Class").)

<u>Galloway I</u> includes only plaintiffs who "are citizens of Virginia, California, Florida, Illinois, Indiana, Maryland, New Jersey, North Carolina, Texas, Ohio, and Washington . . . ." (<u>Galloway I</u>, ECF No. 30 ¶ 14.)

<u>Galloway II</u> also involves only plaintiffs who "are citizens of Virginia, California, Florida, Illinois, Indiana, Maryland, New Jersey, North Carolina, Texas, Ohio, and Washington . . . ." (<u>Galloway II</u>, ECF No. 1 ¶ 20.)

<u>Galloway III</u> is a national class action in which the proposed class includes "[a]ll consumers residing within the United States or its territories who executed loan agreements with Red Rock Tribal Lending, LLC or Big Picture Loans, LLC (including loans assigned to Big Picture Loans, LLC) from June 22, 2013 to the date of the Preliminary Approval Order." (ECF No. 19 at 4–8.)  Because

3

the Settlement Agreement resolves claims of "all consumers residing within the United States," (ECF No. 18-1 ¶ 2.28), the Settlement Agreement was filed in Galloway III, the only action that defined the proposed class as consumers within the United States, as opposed to consumers in specific enumerated states. And, considering that Galloway III involves a broad spectrum of claims and a proposed national class, that decision is a logical one.[3]

In Galloway III, the Plaintiffs, with the agreement of the Settling Defendants, seek certification of a settlement class action in which all of the Plaintiffs' claims against the Settling Defendants will be settled for a cash payment and other consideration. In return, and upon approval of the Settlement Agreement, the Plaintiffs' claims against the Settling Defendants will be released. In December 2019, the Court entered an order preliminarily approving the settlement in Galloway III. (ECF No. 65.) Eventide, which is not a party in Galloway III,[4] has moved

---

[3]   Also, the Settlement Agreement resolves claims in other cases pending in other courts. (ECF No. 18-1 at 1-2 (listing Duggan v. Big Picture Loans, LLC, No. 1:18-cv-12277 (D. Mass.); Smith v. Big Picture Loans, LLC, No. 3:18-cv-01651 (D.Or.); Cumming v. Big Picture Loans, LLC, No. 5:18-cv-03476 (N.D. Cal.); Kobin v. Big Picture Loans, LLC, No. 2:19-cv-02842 (C.D. Cal.); McKoy v. Big Picture Loans, LLC, No. 1:18-cv-03217 (N.D. Ga.).)

[4]   Eventide is among the so-called "Non-Settling Defendants," which also include Gallant Capital LLC, Liont LLC, Matt Martorello,

to intervene in <u>Galloway III</u> "for the limited purpose of challenging the Settlement Agreement between Plaintiffs and the Settling Defendants." (ECF No. 43 at 1.)

## B.   The Background Financial Transactions and History

To understand Eventide's position, it is appropriate briefly to discuss the financial transaction that gives rise to Eventide's contention that it needs to intervene in this action. That transaction is a loan to Tribal Economic Development Holding, LLC ("Tribal Economic Development"), a holding company owned by the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD").

In October 2015, Eventide and Tribal Economic Development entered into a Loan and Security Agreement ("LSA") by which Eventide loaned LVD (through Tribal Economic Development) $300 million to help start LVD's lending business that is the subject of this action.[5] Big Picture Loans, LLC ("Big Picture"), Ascension Technologies, LLC ("Ascension"), and LVD Tribal Acquisition Company ("LVD Tribal Acquisition") are subsidiaries of Tribal Economic Development and those companies executed the LSA as well.

---

Justin Martorello, Rebecca Martorello, Bluetech Irrevocable Trust, Breakwater Holdings, LLC, and Kairos Holdings LLC.

[5]   (ECF No. 74-38 ¶ 2.7 (Agreement and Plan of Merger stating that "amount of merger consideration to be paid to the Seller shall be an amount equal to three hundred million dollars $300,000,000"); <u>see also</u> ECF No. 253-6 ¶ 1.1 (providing that Eventide agreed to lend Tribal Economic Development "a principal amount equal to the Acquisition Amount as defined in the Merger Agreement").)

According to Eventide, as collateral for the loan, Tribal Economic Development and the aforementioned subsidiaries assigned to Eventide its security interest in the property of Tribal Economic Development and the subsidiaries. Along with the LSA, Tribal Economic Development and the subsidiaries also executed a secured promissory note (the "Note") and agreed therein to make future monthly payments to Eventide.

Eventide contends that certain provisions of the Settlement Agreement under consideration here have potential to impair the collateral for the Note payments. More specifically, Eventide contends that the Settlement Agreement "(1) improperly us[es] Eventide's Collateral to fund the Settlement Agreement and (2) lower[s] Remaining Note Payments which LVD and its lending entities must fulfill to complete its equity purchase of Bellicose Capital by capping future debt collections . . . ." (ECF No. 43 at 1.) Remaining Note Payments are the "future monthly payments [Tribal Economic Development and the subsidiaries agreed to make] to Eventide consisting of the gross revenues deposited in [Tribal Economic Development and the subsidiaries'] accounts less certain distributions to LVD, interest, and expenses." (Id. at 4.)

The LSA defines "Collateral" as "all of Borrower's [Tribal Economic Development] and any Subsidiary's present and future right, title and interest in, to and under the following described property whether . . . directly owned by Borrower or owned by a

6

Subsidiary." (ECF No. 43-1 ¶ 2.2(b).) The enumerated properties include:

> (i)     [A]ll now existing and hereafter acquired or arising Accounts, Goods, General Intangibles, Payment Intangibles, Financial Assets, Deposit Accounts (including, without limitation, the Collateral Account), Chattel Paper . . ., Documents, Instruments, Software, Investment Property, Letters of Credit, Letter-of-Credit Rights, Commercial Tort Claims, money, Equipment, Inventory, Fixtures, and Supporting Obligations, together with all products of and Accessions to any of the foregoing and all Proceeds of any of the foregoing . . ., and those agreements held in escrow for benefit of Lender [Eventide] in an Event of Default providing for the potential merger of Ascension . . . .;

> (ii)    [T]o the extent, if any, not included in clause (i) above, each and every other item of personal property and fixtures . . . .;

> (iii)   [A]ll present and future business records and information relating to any of the foregoing . . . .

(Id. ¶¶ 2.2(b)(i)-(iii).) Additionally, the "Collateral Account" is defined as "any account(s) of Borrower [Tribal Economic Development] or a Subsidiary . . . through which Borrower or the Subsidiary conducts its Business and maintains a deposit account control agreements and lockbox agreements to protect the interests of Lender [Eventide] unless otherwise waived by Lender." (Id. ¶ 2.2(c).)

Neither LVD nor Tribal Economic Development are among the Settling Defendants in this case. However, Big Picture and

Ascension (collectively, the "Tribal Defendants") are parties to the Settlement Agreement.

## C.    Relevant Procedural History

The Settlement Agreement is rather complex because it resolves a number of complicated issues involving nine class action cases in this and five other federal district courts. Reduced to its essence, the Settlement Agreement provides for a cash payment of $8.7 million and substantial relief from disputed collection activities for over 450,000 class members. More specifically, the Settlement Agreement provides that Big Picture and Ascension (1) will not collect more than 2.5 times the original principal amount of the loan in payments over the life of the loan (referred to as "2.5x"); (2) will cancel and cease collection of all loans that are more than 210 days in default; and (3) will not sell, transfer, or assign any interest in these charged-off loans and/or future loan proceeds from the charged-off loans. (ECF No. 18-1 ¶¶ 11.2–11.3.) In return, all claims against the Settling Defendants in nine class actions cases will be resolved. Under the Settlement Agreement, the consumer loans made by Big Picture will continue to be serviced by Ascension and the proceeds thereof will be collected and will be available to make payments on the Note to Eventide.

Galloway III was filed on June 26, 2019. (ECF No. 1.) The PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 18) in Galloway III was filed on November 26,

8

2019. Eventide filed the MOTION on December 18, 2019, two days before the Court held a hearing regarding preliminary approval of the Settlement Agreement. Two days earlier, on December 16, 2019, Eventide filed a DEMAND FOR ARBITRATION (ECF No. 47) with the American Arbitration Association (the "AAA") against LVD, Tribal Economic Development, Big Picture, Ascension, and LVD Tribal Acquisition pursuant to the LSA and the Note. (Id. at 2, 27.) In that arbitration, Eventide asserts that the terms of the Settlement Agreement to which it proposes to object in this action constitute violations of the LSA. (Id. ¶¶ 32-34.) The arbitration is ongoing, and the Court is told that it will be decided perhaps within the next few months. (See ECF No. 91 at 92-93.)

Then, on December 17, 2019, Eventide filed suit against Big Picture, Ascension, and Tribal Economic Development in the Western District of Michigan (the "Michigan Suit") and sought a temporary restraining order "barring Defendants from taking any action that would constitute a Material Adverse Effect under the relevant contract, including but not limited to entering into the contemplated settlement agreement . . . ." (Eventide Credit Acquisitions, LLC v. Big Picture Loans, LLC, No. 2:19-cv-256 (W.D. Mich.), ECF No. 5 at 1-2.) The Michigan Suit was an effort to preclude Big Picture, Ascension, and Tribal Economic Development from proceeding with the settlement process pending in this action. The district court in the Michigan Suit summarily denied Eventide's

9

Motion for Temporary Restraining Order, explaining that, "it is far from clear that [Eventide] is likely to prevail on the merits" and that Eventide's "contentions are based, in significant part, on [Eventide's] speculation about what might happen in [Big Picture, Ascension, and Tribal Economic Development's] businesses as a result of the class action settlement . . . ." (Eventide Credit Acquisitions, LLC, No. 2:19-cv-256, ECF No. 14 at 1-3.) Thereafter, Eventide voluntarily dismissed the action without prejudice on January 28, 2020. (Eventide Credit Acquisitions, LLC, No. 2:19-cv-256, ECF No. 23.)

In another effort to foreclose the settlement process in this Court, on January 28, 2020, Eventide filed a NOTICE OF SUGGESTION OF BANKRUPTCY AND AUTOMATIC STAY OF PROCEEDINGS (ECF No. 307) (the "Notice") in Galloway II. The Notice stated that Eventide had "filed a voluntary petition for relief in the United States Bankruptcy Court for the Northern District of Texas" and that:

> [N]o cause of action . . . may be commenced or prosecuted against the Debtor [Eventide], and no related judgment may be entered or enforced against the Debtor outside of the Bankruptcy Court without the Bankruptcy Court first issuing an order lifting or modifying the automatic stay. Accordingly, all currently pending lawsuits, including [Galloway II], [are] stayed, and all actions taken in violation of said automatic stay are null and void as against the Debtor."

(Galloway II, ECF No. 307 at 1-2.)[6]   The United States Bankruptcy Court for the Northern District of Texas recently dismissed Eventide's bankruptcy case on June 9, 2020 after "find[ing] that the Debtor [Eventide] has not filed and prosecuted the Bankruptcy Case in good faith . . . ."   (Galloway II, ECF No. 349-1 at 51-56.)

It is against this background that Eventide's MOTION to intervene to object to the Settlement Agreement must be decided.

## DISCUSSION

### 1. LEGAL STANDARD UNDER FED. R. CIV. P. 24(a)

Eventide moves to intervene under Rule 24(a)(2).   (ECF No. 42 at 1.)   Rule 24(a) governs interventions of right and provides that, "[o]n timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   Fed. R. Civ. P. 24(a).   "[T]o intervene as a matter of right under Rule 24(a), a movant generally must satisfy four criteria: (1)

---

[6]   Eventide did not file the Notice in this action, Galloway III, and Galloway III is not an action being prosecuted against Eventide and this decision denying the MOTION is not a judgment against Eventide.   Thus, the MOTION seeking intervention is not subject to the automatic stay in bankruptcy.

timeliness, (2) an interest in the litigation, (3) a risk that the interest will be impaired absent intervention, and (4) inadequate representation of the interest by the existing parties." Scott v. Bond, 734 Fed. App'x 188, 191 (4th Cir. 2018); see also Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989) ("[I]n addition to timeliness, intervention of right is dependent on the moving party's fulfillment of three requirements: interest, impairment of interest and inadequate representation.").

## 2. Eventide Lacks Standing.

As a threshold matter, Eventide lacks standing to challenge the Settlement Agreement.  "Cases involving non-class members' attempts to intervene and/or object to settlements are few, and the courts usually reject the outsiders' attempts to enter the litigation during the settlement phase." Gould, 883 F.2d at 285 (listing cases). "As an initial matter, unless it can demonstrate 'formal legal prejudice,' a non-settling defendant generally lacks standing to challenge a partial settlement agreement, including the form and manner of notice to the class, as well as class certification for settlement purposes." In re Zetia Antitrust Litig., No. 2:18-md-2836, 2019 WL 6122038, at *4-5 (E.D. Va. Oct. 1, 2019) ("Zetia") (concluding that movants failed to demonstrate formal legal prejudice because "[p]reliminary certification of the settlement class . . . will not affect—nor prevent [movants] from

later challenging—litigation class certification on the same grounds presented in their objections").

"Formal legal prejudice occurs where a non-settling defendant is stripped of a legal claim or cause of action or where the agreement interferes with his contract rights or his ability to seek indemnification or contribution." Bragg v. Robertson, 54 F. Supp. 2d 653, 664 (S.D. W. Va. 1999) (quoting Alumax Mill Prods. v. Cong. Fin. Corp., 912 F.2d 996, 1002 (8th Cir. 1990)) (internal quotation marks and citations omitted). In other words, a "non-settling defendant suffers formal legal prejudice and can therefore challenge a partial settlement when that settlement 'purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example, or to invalidate its contract rights.'" Zetia, No. 2:18-md-2836, 2019 WL 6122038, at *4 (E.D. Va. Oct. 1, 2019) (quoting Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995)). Consequently, "non-settling defendants in a partial settlement have no standing to object to the fairness or adequacy of the settlement, but they may object to any terms which preclude them from seeking indemnification from the settling defendants." In re Beef Industry Antitrust Litig., 607 F.2d 167, 172 (5th Cir. 1979) (quoting 3 Newberg on Class Actions § 5660b at 564-65 (1977)). A "settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed

13

parties, does not cause plain legal prejudice to the non-settling party." Agretti v. ANR Freight Sys., Inc., 982 F.2d 242, 247 (7th Cir. 1992).

In this case, Eventide has not demonstrated that it has suffered formal legal prejudice.   In December 2019, Eventide initiated arbitration proceedings against Tribal Economic Development, Big Picture, Ascension, and LVD Tribal Acquisition for, inter alia, "anticipatory" breaches of the LSA and the Note because these entities "have unequivocally indicated to Eventide that they will enter into the Settlement Agreement, which will cause them to knowingly and materially breach the LSA . . . ." (ECF No. 47 at 19-21.)   The Settlement Agreement referred to is the Settlement Agreement pending before this Court.   Eventide's ability to initiate arbitration proceedings shows that the Settlement Agreement does not prevent Eventide from asserting its contract claims against the parties with which it has contracted. Although Eventide may have to bring suit against the Settling Defendants, a "settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties, does not cause plain legal prejudice to the non-settling party." Agretti, 982 F.2d at 247.

Because the Settlement Agreement does not strip Eventide of its legal claims or causes of action and does not interfere with

Eventide's contract rights or ability to assert its claims, Eventide has not suffered formal legal prejudice. Eventide thus lacks standing to challenge the Settlement Agreement.

### 3. The Timeliness Issue

#### a. Guiding Legal Principles

"Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness." NAACP v. New York, 413 U.S. 345, 365-66 (1973). "Timeliness is a central consideration when deciding a motion to intervene, and a movant's failure to seek intervention in a timely manner is sufficient to justify denial of such motion." Scott v. Bond, 734 Fed. App'x 188, 191 (4th Cir. 2018). When determining whether a motion to intervene is timely, the "reviewing court should look at [(1)] how far the suit has progressed, [(2)] the prejudice which delay might cause other parties, and [(3)] the reason for the tardiness in moving to intervene." Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989); see also Scott, 734 Fed. App'x at 191. Even if Eventide had standing to intervene (which it does not), the MOTION will be denied for the additional reason that it is untimely.[7]

---

[7] "Ordinarily, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative

### b. Facts Relating to Timeliness

As explained briefly above, this action, Galloway III, results in the settlement of the Plaintiffs' claims against the Settling Defendants as those claims are presented in several different cases in this district and in cases pending other districts. Specifically, the Plaintiffs' claims against the Settling Defendants in Williams, Galloway I, and Galloway II will be settled by virtue of the Settlement Agreement submitted in this case. Additionally, the claims of the Plaintiffs against the Settling Defendants will also be settled in Duggan v. Big Picture Loans, LLC, No. 1:18-cv-12277 (D. Mass), Smith v. Big Picture Loans, LLC, No. 3:18-cv-01651 (D. Or.), Cumming v. Big Picture Loans, LLC, No. 5:18-cv-03476 (N.D. Cal.), Kobin v. Big Picture Loans, LLC, No. 2:19-cv-02842 (C.D. Cal.), and McKoy v. Big Picture Loans, LLC, No. 1:18-cv-03217 (N.D. Ga.). Although this case, Galloway III, was filed relatively recently, the Settlement Agreement resolves all claims against the Settling Defendants in Galloway III and eight other cases that have been pending for two to three years in this district and in five other federal districts.

---

holdings." Amato v. City of Richmond, 875 F. Supp. 1124, 1139 (E.D. Va. 1994). However, if this decision should be appealed, it is best under the circumstances of this case to provide alternate reasoning.

16

In the spring of 2019, the parties began discussing settlement. (ECF No. 74-58 ¶ 9.) Thereafter, formal mediation sessions were conducted on July 2, 2019, August 5, 2019, and August 26, 2019. (Id. ¶ 14.) Those settlement negotiations occurred in several formal mediation sessions and telephone conferences with a private mediator (Nancy Lesser of PAX ADR Dispute Resolution & Mediation Services) and with then Magistrate Judge David J. Novak. (Id. ¶¶ 14, 16–17.) The discovery taken in the pending cases provided substantial information that was used to help frame mediation sessions in July and August 2019.

The record reflects that, at all times from the initial filings through the mediations in summer of 2019, all of the defendants, including both Settling and Non-Settling Defendants, were represented by Virginia counsel, Troutman Sanders, or were assisted by counsel from outside this district depending upon the particular defendant involved. What became the essential terms of settlement, to which Eventide objects today, were laid out as the predicate for the discussions that were held in July and August 2019. (Id. ¶ 10.) These essential terms included cash payments to claim members and prospective relief for borrowers. The Plaintiffs early on advised that they considered those basic terms to be elements of an essential structure for settlement, and those terms were sent to counsel for the Settling Defendants and the Non-Settling Defendants. (See id. at 10.) From the outset, it

17

was made clear that the Plaintiffs' intended settlement terms would require the Tribal Defendants to reduce interest charged and to pay money even if to do so would be over the objection of Martorello, and any entity (such as Eventide) which he owned or controlled, directly or indirectly.

The Settling Defendants and the Non-Settling Defendants, including the Non-Settling Defendants' lead counsel, Richard Scheff, attended each of the mediations. (Id. ¶ 15.) Following the three private mediation sessions in Washington, D.C. (July 2, 2019, August 5, 2019, and August 26, 2019), counsel conducted further negotiations by way of telephone with Nancy Lesser and Judge Novak. Subsequently the Plaintiffs and the Settling Defendants, represented by Troutman Sanders, attended a follow-up settlement conference with Judge Novak.

Then, in early October 2019, the Plaintiffs arrived at basic settlement terms with the Settling Defendants. (Id. ¶ 17.) The first draft of a Memorandum of Understanding was circulated on October 4, 2019, although not, apparently, to Eventide. (Id.; see also ECF No. 81-4 (November 22, 2019 letter from Eventide's counsel to Plaintiffs' counsel stating that Eventide had not received Memorandum of Understanding).) As forecast by the Plaintiffs' demands throughout the mediation process, the Plaintiffs and the Settling Defendants agreed upon the interest ratio of 2.5x and the cash payment amount. (ECF No. 74-58 ¶ 18.)

18

As the parties were about to conclude the settlement negotiations, David Anthony, counsel for the Settling Defendants, advised the Plaintiffs' lead counsel, Leonard Bennett, that a new lawyer who represented Martorello's entity, Eventide, would be contacting Mr. Bennett to discuss including some of the Non-Settling Defendants in the settlement. (Id. ¶ 19.)  Thereafter, Mr. Bennett spoke with Bernard Given, a Los Angeles lawyer representing Eventide, and corresponded with him by email in early October 2019.  (Id. ¶ 20; see also id. at 14.)  On October 14, 2019, Mr. Given acknowledged that his clients were aware of the parts of the Settling Defendants' settlement to which they now object, including the interest ratio of 2.5x and the cash to be paid ($8.7 million).  (Id. at 16-17; see also id. ¶ 21.)  That same letter expressly discussed his client's position that the intended settlement could jeopardize his client's cash collateral. (Id. at 16-17.)

Then, on October 21, 2019, Mr. Bennett communicated with Mr. Given, who was by then negotiating for all of the Non-Settling Defendants.  (Id. ¶ 23; see also id. at 19-22.)  The Plaintiffs then made a formal settlement offer to the Non-Settling Defendants in which Plaintiffs' counsel referred to the settlement previously reached with the Settling Defendants and stated that "[w]e do not intend to renegotiate that settlement with you" and then outlined

19

settlement terms in addition to those that had been obtained from the Settling Defendants. (Id. at 19-22.)

With respect to the now-contested 2.5x interest ratio, Plaintiffs' counsel advised the Non-Settling Defendants' counsel that "the Tribal Defendants have agreed to collect no more than 2.5x the original principal amount of the loan in payments over the life of the loan" and that "[i]n addition to those existing reductions, the Non-Tribal Defendants would agree to cause the further reduction of this 2.5 times cap down to 1.0 times principal." (Id. at 20.) With respect to the cash consideration component, counsel for the Plaintiffs explained that the Tribal Defendants had agreed to pay $8.7 million cash into a settlement fund. (Id.) After those exchanges of written communications, the Plaintiffs and all Non-Settling Defendants attended a further settlement conference with Judge Novak on October 28, 2019. (Id. ¶ 27.) One month later, on November 22, 2019, Mr. Given wrote to Mr. Bennett to again outline Eventide's disapproval of the $8.7 million and 2.5x cap settlement. (ECF No. 81-4.)

This factual background informs assessment of the timeliness component of the intervention test.

### c. Progression of the Suit

The first timeliness factor is how far the suit has progressed. Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989). "The purpose of the [timeliness] requirement is to prevent

a tardy intervenor from derailing a lawsuit within sight of the terminal." Scardelletti v. Debarr, 265 F.3d 195, 202 (4th Cir. 2001) (quoting United States v. S. Bend Cmty. Sch. Corp., 710 F.2d 394, 396 (7th Cir. 1983)) (internal quotation marks omitted), rev'd on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002). "A settlement in principle raises a strong interest in finality." Scott v. Bond, 734 Fed. App'x 188, 191-92 (4th Cir. 2018) ("This lengthy delay and the fact of settlement supplied strong reasons for the district court to question the timeliness of Scott's motion."). "Moreover, intervention often is disfavored when it would disrupt a proposed settlement late in the litigation process, because such intervention may threaten the delicate balance reached by existing parties after protracted negotiations." Id. at 192 (quoting Smith v. L.A. Unified Sch. Dist., 830 F.3d 843, 857 (9th Cir. 2016)) (internal quotation marks omitted).

Here, the many cases that the Settlement Agreement resolves have progressed well along the protracted and complex litigation journey. Allowing Eventide to intervene at this stage would "derail[] a lawsuit within sight of the terminal." Scardelletti, 265 F.3d at 202 (quoting S. Bend Cmty. Sch. Corp., 710 F.2d at 396) (internal quotation marks omitted), rev'd on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002). The first timeliness factor, progression of the suit(s), weighs strongly against intervention.

### d. **Prejudice**

The second timeliness factor requires the Court to consider the prejudice to existing parties if intervention is permitted. Gould, 883 F.2d at 286. Prejudice to existing parties can include the "delay caused by substantial additional litigation . . . ." Scott, 734 Fed. App'x at 192; see also Gould, 883 F.2d at 286. Eventide's intervention would "disrupt [the] proposed settlement" and "threaten the delicate balance reached by existing parties after protracted negotiations." Scott, 734 Fed. App'x at 192 (quoting Smith, 830 F.3d at 857) (internal quotation marks omitted). This derailment and the consequent time and resources the parties would have to expend to reach a new settlement agreement or to continue this litigation clearly constitutes prejudice to the Plaintiffs and the Settling Defendants.

Moreover, this Settlement Agreement benefits approximately 450,000 potential members of the proposed settlement class by conferring on them significant financial benefits and by significantly limiting, or eliminating, their obligations under quite burdensome loan agreements. These individuals would be significantly prejudiced by Eventide's last-minute intervention. Consequently, the second timeliness factor also weighs against intervention.

22

### e. Reason for Tardiness

Under the last timeliness factor, "the Court must consider the rationale behind the movant's tardiness in filing its motion to intervene." Penn-Am. Ins. v. White Pines, Inc., No. 3:18-cv-650, 2019 WL 418859, at *3 (E.D. Va. Feb. 1, 2019); see also Gould, 883 F.2d at 286. Plausible justifications for movants' tardiness can include "if there had been a substantial change of circumstances in the case." Scott, 734 Fed. App'x at 192 (quoting Smith, 830 F.3d at 854) (internal quotation marks and citation omitted). "However, if an intervenor was aware of a parallel case from the outset but pursued a separate suit, the fact of a proposed settlement in the parallel case by itself is not a change of circumstances sufficient to justify tardy intervention." Id. at 191 (internal quotation marks omitted).

Eventide has not provided an adequate justification for its tardy intervention. All parties, including the defendants who ultimately did not settle, were involved in the settlement negotiations starting from approximately April 2019, meaning that Eventide had notice of the settlement negotiations. (See ECF No. 74-58 ¶¶ 9, 14, 17.) Additionally, Spotts Fain PC represents Eventide, alongside, inter alia, Matt Martorello and Justin Martorello, who, through other entities, control Eventide. (See, e.g., ECF No. 53; Galloway II, ECF No. 26; Galloway I, ECF No. 79.) The Plaintiffs' counsel discussed with the Non-Settling

23

Defendants' lead counsel, Richard Scheff, at the July and August 2019 mediations, the terms that ultimately became part of the Settlement Agreement and it is two of those key terms that Eventide has belatedly invoked as a reason to intervene. (ECF No. 74-58 ¶ 15.) Even if Eventide had not been aware of the precise terms of the Settlement Agreement during those negotiations, Eventide's counsel, Bernard R. Given II, wrote to the Plaintiffs' counsel on October 14, 2019 to object to the interest rate cap and the proposed $8.7 million payment. (Id. at 16.) Additionally, Plaintiffs' counsel informed Eventide once again of the interest rate cap and proposed $8.7 million payment on October 22, 2019. (Id. at 19-22.) In light of this record, Eventide's argument that it was unaware that its interests were implicated by the Settlement Agreement until the Plaintiffs filed for preliminary approval of the Settlement Agreement in November 2019 is simply not credible.

Quite plainly, the Court sees a troubling pattern in Eventide's conduct. When it did not secure settlement terms that suited it, Eventide set out to scuttle the settlement made by the Settling Defendants by filing a baseless injunction motion in the federal court in Michigan and a bankruptcy proceeding that the Texas federal court found to have been filed in bad faith. Then Eventide decided belatedly to try to intervene here to impede the settlement it had failed to stop in those two endeavors in Michigan and Texas. This too must factor into the analysis of the reasons

24

for the MOTION.   And, this conduct, taken as a whole, counsels against a finding of timeliness.

Each of the timeliness factors weighs strongly against intervention.   Therefore, the Court finds that Eventide did not timely file the MOTION, and the MOTION will be denied for this additional reason.

## 4. An Interest in the Litigation

Even if Eventide had standing and its MOTION were timely, Eventide's MOTION will be denied for the additional reason that Eventide has not adequately shown that it has an interest in the litigation.[8]

### a. Guiding Legal Principles

"When analyzing motions to intervene as of right, this Court has explained that the proposed intervenor bears the burden to demonstrate that he or she possesses a 'direct and substantial interest' in the litigation."   Catharine W. v. Sch. Bd. of Va. Beach, No. 2:17-cv-645, 2018 WL 4474688, at *2 (E.D. Va. Sept. 4, 2018) (quoting Bostic v. Rainey, No. 2:13-cv-395, 2014 WL 12527251, at *1 (E.D. Va. Jan. 17, 2014)); see also In re Richman, 104 F.3d 654, 658 (4th Cir. 1997) ("[A] would-be intervenor bears the burden

---

[8]     As explained *supra* n.7, "it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings."   Amato v. City of Richmond, 875 F. Supp. 1124, 1139 (E.D. Va. 1994).   However, it is best under the circumstances of this case to provide alternate reasoning.

of demonstrating to the court a right to intervene."). Although "Rule 24(a) does not specify the nature of the interest required for a party to intervene as a matter of right, the Supreme Court has recognized that what is obviously meant is a significantly protectable interest." Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991) (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)) (internal quotation marks and alterations omitted). "Merely claiming a general interest in [an entity's] assets based on a speculative recovery in an unrelated civil action does not, however, satisfy Rule 24's requirement that the claim be 'relating to the property or transaction which is the subject of the action.'" Gould v. Alleco, Inc., 883 F.2d 281, 285 (4th Cir. 1989). However, intervention is appropriate where the would-be intervenors "stand to gain or lose by the direct legal operation of the district court's judgment . . . ." Teague, 931 F.2d at 261.

**b. Eventide Has Not Shown It Has an Interest.**

Two aspects of the Settlement Agreement have precipitated Eventide's objection to the Settlement Agreement, and hence the MOTION. The first aspect involves the Settling Defendants paying a cash payment of $8.7 million to the Settlement Class. That provision is described as the providing of monetary relief for borrowers (in the putative class) who have already paid amounts on

their loans in excess of the applicable usury cap.  (ECF No. 18-1 ¶ 10.1.)

Eventide contends that the Settlement Agreement impermissibly "sourc[es] some or all [of] the $8.7 million . . . from the operations of the Subsidiaries," (ECF No. 43 at 8), that "the Settling Defendants plan to use Eventide's Collateral to fund the majority of the Settlement Agreement," (id.), and that "if the Court approves the settlement agreement, Eventide's Collateral will be substantially degraded and harmed," (ECF No. 81 at 17). However, Eventide fails to adequately support or explain these conclusory statements.  Nothing in the Settlement Agreement requires or provides that the Settling Defendants use Eventide's collateral to fund any part of the $8.7 million settlement.  (See generally ECF No. 18-1.)  Indeed, the only instances in which an interest in Eventide is mentioned in the Settlement Agreement is with respect to defendants James Dowd, Simon Liang, and Brian McFadden who "each presently own discrete membership interests in Eventide" and are "entitled to receive payments" from the LSA and Note.  (Id. ¶ 10.2.)  The Settlement Agreement provides that Dowd, Liang, and McFadden "shall transfer to the Settlement Fund their respective Eventide membership interests, including their respective interests in future Eventide distributions, if any, received under the Eventide Note."  (Id.)  Similarly, Eventide's statement that the LSA requires that Eventide be paid before all

27

others, including the Plaintiffs, is conclusory and does not explain how the Settlement Agreement actually impacts Eventide's collateral. (See, e.g., ECF No. 91 at 97-98.)

Second, the settlement provides for prospective relief for borrowers who have current or defaulted loans. (ECF No. 18-1 ¶ 11.2.) On that score, under the Settlement Agreement, Big Picture and Ascension agreed to collect no more than 2.5 times the original principal amount of the loan in payments over the life of loan for individuals who executed loan agreements on or after June 22, 2013. (Id.) Big Picture also agreed to "charge off . . . loans [entered into from June 22, 2013] after being at least 210 days in default ('Charged-Off Loans')." (Id. ¶ 11.3.) Similarly, Big Picture and Ascension "agree[d] to cease any collection activities and cancel all such loans as a contested liability to the extent not already done for Charged-Off Loans." (Id.)

Eventide contends that the 2.5x ratio will "further reduce[] note payments that should go to Eventide." (ECF No. 81 at 17.) Similarly, Eventide further alleges, again without support, that "it is entirely Eventide's note payments that comprise the settlement contributions." (Id. (internal emphasis omitted).) Nothing in the Settlement Agreement suggests this result. As explained above, the only references to any interest in Eventide

28

are with respect to Dowd, Liang, and McFadden's discrete membership

interests in Eventide.   (ECF No. 18-1 ¶ 10.2.)

Lastly, Eventide has failed to show that it has an interest

in this litigation because Eventide does not stand to gain or lose

by the Court approving the Settlement Agreement.   See Teague v.

Bakker, 931 F.2d 259, 261 (4th Cir. 1991).   As explained *supra*

with respect to standing, if the Court approves the Settlement

Agreement, Eventide will still be able to assert—and, indeed, is

even now asserting—its legal rights through arbitration.   (ECF No.

47.)   The LSA explicitly provides that:

> In the event that either Party to this
> Agreement believes that the other Party has
> failed to comply with any requirement of this
> Agreement . . ., or in the event of any
> dispute hereunder, including, but not limited
> to, a dispute over the proper interpretation
> of the terms and conditions of this Agreement,
> the following procedures shall be invoked:
>
> ***
>
> (b)  Binding arbitration.   After failure to
> resolve such disputes within two (2) days
> of notice, either Party may refer a
> dispute arising under this Agreement to
> arbitration with the American
> Arbitration Association (the
> "AAA"). . . . The arbitrator shall issue
> a final and binding decision . . . in
> which the remedies available through
> arbitration are limited to enforcement of
> the provisions of this Agreement and any
> associated equitable or monetary relief.

(ECF No, 43-1 ¶ 8.5.)   Accordingly, Eventide may assert its claims

through binding arbitration under a bargained-for and agreed-to

29

provision of the LSA.   The Court's future approval of the Settlement Agreement (if that is done) does nothing to impair Eventide's ability to pursue its claims through arbitration. Consequently, because Eventide's statements regarding its alleged interest are entirely conclusory and because Eventide does not stand to gain or lose by the Court approving the Settlement Agreement,[9] Eventide has failed to show that it has a significantly protectable interest in the litigation and its MOTION will thus be denied for this additional reason.[10]

---

[9]     The Court does not reach a conclusion as to whether there has been a breach of the LSA (the subject of the pending arbitration proceedings)—only that Eventide has failed to prove it has an interest that meets Fed. R. Civ. P. 24(a)'s requirements.

[10]    Because Eventide has failed to show that its MOTION was timely or that Eventide has an interest in the litigation, it is not necessary to determine whether Eventide has satisfied the remaining requirements—a risk that the interest will be impaired absent intervention and inadequate representation of the interest by the existing parties.

## CONCLUSION

For the reasons set forth above, EVENTIDE CREDIT ACQUISITIONS, LLC'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(a) (ECF No. 42) will be denied.

It is so ORDERED.

/s/  *ReP*
_____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: August 7, 2020